AARON R. STEVENS et al., Respondents, *v.* THE CENTRAL NATIONAL BANK of Boston et al., Impleaded, etc., Appellants.

The courts have power to and will set aside as a nullity a judgment or decree obtained by fraud.

Where an action brought in the Supreme Court of this state has been removed into the United States Circuit Court, on the ground of citizenship of parties, all that can be claimed for the decree of the latter court therein is that it be accorded the same force and effect as a similar judgment of said Supreme Court.

While the state courts have no authority to stay proceedings in actions in the Federal courts, when the parties to such an action are residents of the state, a state court of equity may act *in personam* upon those parties and direct them to proceed no further in such suit.

An action was brought by S., a holder of bonds issued by a railroad company, secured by a mortgage on its property, ostensibly as a representative of all the bondholders, to charge purchasers on sale under a judgment in an action to foreclose the mortgage as trustees for the bondholders, on the ground that the purchase money had not been paid. The complaint also prayed for a receiver, a sale of the property, and that all titles under the foreclosure sale should be declared void. The necessary parties to make such a decree binding were not brought in. Other bondholders petitioned to be made parties, but their applications were denied. A receiver was appointed, and upon his petition, he was authorized to issue receiver's certificates, the same to be a first lien upon the property. Pursuant to a judgment in that action, the property was sold. One of the holders of certificates so issued, in behalf of itself and other certificate holders, brought an action against the purchasers under said judgment and their grantee, asking to have the certificates declared the first lien on the property, and to enforce the lien by a sale, etc. This suit was removed into the United States Circuit Court, on the ground of citizenship of the parties, a decree was there entered in favor of plaintiffs and a sale of the property ordered. Thereafter, but before a sale under said decree, this action was brought by bondholders, all the parties in interest being brought in, for relief against the S. judgment and the proceedings under it, on the ground that the action was fraudulent; also, to enforce the original foreclosure judgments. The judgment herein perpetually restrained the plaintiffs in the action in the Federal court from proceeding with a sale under the decree. The sale, however, was proceeded with and the property sold. *Held,* that the court had jurisdiction to review the S. judgment, vacate it as fraudulent and set aside the proceedings under it, also, to enjoin

the certificate holders from proceeding with the sale under the decree; and so, that the sale under the decree was without force or effect.

The judgment herein directed the appointment of a referee to ascertain who were the owners of the railroad bonds, and which of them were actually brought in in the S. suit, and the referee, to sell, was directed to pay the net amount realized to the bondholders, except that as to the proportions coming to the owners of such bonds as were in the S. suit he should pay so much thereof to the owners of the certificates as would be necessary to satisfy the same, and the balance, if any, to the holders of said bonds. *Held*, that the judgment was proper.

Reported below, 69 Hun, 460.

(Argued October 25, 1894; decided November 27, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made May 9, 1893, which affirmed a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Matthew Hale* for appellants. The decision and judgment appealed from are erroneous in that they undertake to perpetually enjoin the appellants from proceeding with the sale of the premises under the decree of the Circuit Court of the United States, a copy of which is appended to the answer of the defendant, the Central National Bank of Boston, and from suffering said sale to proceed. (*McKim* v. *Voorhis*, 7 Cranch, 279; *Rhode Island* v. *Massachusetts*, 12 Pet. 718; *U. S.* v. *Council of Keokuk*, 6 Wall. 514; *Mayor* v. *Lord*, 9 id. 409; *Suprs.* v. *Durant*, Id. 415; *Amy* v. *Suprs.*, 11 id. 136; *R. G. R. R. Co.* v. *Gomilla*, 132 U. S. 478; *In re S. S. T. B. Co.*, 136 N. Y. 169; *Corell* v. *Heyman*, 111 U. S. 176; *Dupasseur* v. *Rochereau*, 21 Wall. 130; *Embry* v. *Palmer*, 107 U. S. 3.) The motion to dismiss the complaint upon the merits should have been granted. (*Kerr* v. *Blodgett*, 48 N. Y. 62; *Thompson* v. *Brown*, 4 Johns. Ch. 619, 638; *Wilder* v. *Keeler*, 3 Paige, 164; *Brooks*

v. *Gibbons,* 4 id. 374; *Egberts* v. *Wood,* 3 id. 517; *Travis* v. *Myers,* 67 N. Y. 542; *Schuehle* v. *Reiman,* 86 id. 270; *Hobart* v. *Hobart,* 23 Hun, 384; *In re Atty.-Gen.* v. *N. A. L. Ins. Co.,* 77 N. Y. 297, 299, 300; *Lewis* v. *Jones,* 50 Barb. 645, 673; *Freeman* v. *Auld,* 44 N. Y. 50; *Frederick* v. *Brewster,* 26 Hun, 236; *Horton* v. *Davis,* 26 N. Y. 495; *Parkinson* v. *Sherman,* 74 id. 88.)

*Edward Winslow Paige* for respondents. The injunction was correctly adjudged; equity required that the parties to this action should not be permitted to proceed with the sale under the decree of the United States court. (*N. Y., N. H. & H. R. R. Co.* v. *Schuyler,* 34 N. Y. 30; *Barry* v. *Brune,* 8 Hun, 395; *Hale* v. *Clauson,* 60 N. Y. 339; *King* v. *Duryea,* 76 id. 626; *N. Y. & N. H. R. Co.* v. *Schuyler,* 17 How. Pr. 464, 468; *N. Y. & N. H. R. R. Co.* v. *Haws,* 56 N. Y. 175; *Vail* v. *Knapp,* 49 Barb. 299; *Claflin* v. *Hamlin,* 62 How. Pr. 284; *C. I. Co.* v. *McClaren,* 5 V. C. 416; *Dehon* v. *Foster,* 4 Allen, 545, 550; 7 id. 57; *Van Gilder* v. *Van Gilder,* 26 Hun, 356, 360; *French* v. *Hay,* 22 Wall. 250; *B. & O. R. Co.* v. *Ford,* 33 Fed. Rep. 170; *The Amsterdam,* 23 id. 112; *Murray* v. *Overstotte,* 8 id. 110; *Fisk* v. *U. P. R. R. Co.,* 10 Blatchf. 518, 520; *Marshall* v. *Holmes,* 141 U. S. 580.) The judgment and proceedings in Sackett's suit were properly reviewed, reversed, vacated and set aside. (*Campbell* v. *R. R. Co.,* 1 Woods, 368; *Hallett* v. *Hallett,* 2 Paige, 15, 22; *W. R. R. Co.* v. *Nolan,* 48 N. Y. 513, 517, 518; *Ensminger* v. *Powers,* 108 U. S. 292; *W. T. B. Co.* v. *Hatch,* 125 id. 1; *Thomas* v. *Hawie,* 10 Wheat. 146; *Parkinson* v. *Sherman,* 74 N. Y. 88; 57 Hun, 509; *Hackley* v. *Draper,* 60 N. Y. 88, 92; *Dobson* v. *Pearce,* 12 id. 156; *State* v. *P. Bank,* 33 id. 9, 27; *Dunning* v. *Leavitt,* 85 id. 30.)

BARTLETT, J. This appeal involves a contest between the bondholders and holders of receiver's certificates of the Lebanon Springs Railroad Company and its successor, the Harlem Extension Railroad Company.

A recital of the main facts in this litigation is essential as it will present clearly the questions of law submitted for our determination.

The Lebanon Springs Railroad Company, in 1869, was operating its completed road from Chatham, New York, to Bennington, Vermont; prior to that time, in July, 1867, it issued and sold its bonds to the amount of two millions of dollars, and secured the same by mortgage to the Union Trust Company of New York, in trust, covering its property, rights and franchises.

Early in the year 1870, the Lebanon Springs Railroad Company consolidated with the Bennington and Rutland Railroad Company, of Vermont, and the new corporation took the name of the Harlem Extension Railroad Company.

This latter company in April, 1870, made its mortgage to the Union Trust Company of New York, in trust, to secure the payment of four millions of dollars of its bonds, but only one million four hundred thousand dollars of this issue were negotiated.

In February, 1872, the Union Trust Company began the foreclosure of the first-named mortgage in the Supreme Court of New York, and later in the same year it filed bills in the Court of Chancery in Vermont to foreclose both mortgages in that jurisdiction.

In December, 1872, and while the suits mentioned were pending, the Harlem Extension Railroad Company consolidated with corporations, not material to mention in this connection, and assumed the name of the New York, Boston and Montreal Railway Company.

In January, 1873, the property covered by the two million mortgage in this state was sold and conveyed, in the Union Trust Company foreclosure suit, to James C. Hull, a clerk in the office of defendant William Butler Duncan, for the nominal sum of one hundred thousand dollars, and about the same time there were sales under the Vermont decrees and conveyances executed to Charles G. Lincoln, a clerk for one Trenor W. Park, for the nominal sum of fifty thousand dollars.

It is found in this action that the Union Trust Company never did anything to enforce the payment of these bids, and that they were never paid.

On the 28th of January, 1873, Hull and Lincoln, without any consideration, executed to the defendant William Butler Duncan and one Trenor W. Park a bond for the payment of five millions of dollars, secured by mortgage covering the property conveyed to them under the foreclosure sales in New York and Vermont.

It is found in this action that both Duncan and Park knew that the consideration for the deeds to Hull and Lincoln remained unpaid. On the 30th of January, 1873, Hull and Lincoln conveyed the property without consideration, and subject to the Duncan and Park mortgage, to the New York, Boston and Montreal Railway Company.

The five million dollar mortgage made to Duncan and Park represented substantially the aggregate indebtedness which the New York, Boston and Montreal Railway Company was to assume under the consolidation and other agreements.

The latter company paid to Duncan and Park $807,077.05 on account of the money due on said mortgage, but failed to pay the balance, became insolvent, and, in April, 1875, Daniel Butterfield was appointed, by the Supreme Court of the State of New York, receiver of all its property and effects.

During the year 1873 the New York, Boston and Montreal Railway Company executed to Seligman, Sherman and Brown a mortgage to secure bonds to the aggregate amount of twelve millions two hundred and fifty thousand dollars; also another mortgage to the New York Loan and Indemnity Company to secure the payment of additional bonds to the aggregate amount of twelve millions seven hundred and fifty thousand dollars.

A sufficient amount of these bonds were sold in Europe to realize six millions of dollars.

In November, 1873, the New York, Boston and Montreal Railway Company leased its road to the Central Vermont Railway Company, which lease was operated until August 20th, 1877, when it was abandoned.

In the meantime the lessor company had become insolvent, as already stated, and in September, 1877, one Russell C. Root took possession of the property without legal right, and, subsequently, on November 27th, 1877, delivered possession thereof to a corporation called the Harlem Extension Railroad South Coal Transportation Company.

Root, in the name of this company, and as its president, continued to operate the road until possession was taken from him by the court, as will presently appear.

In September, 1880, one Marvin Sackett, a bondholder of the Lebanon Springs Railroad Company, brought an action in the Supreme Court of New York against Russell C. Root, the Harlem Extension Railroad South Coal Transportation Company, the New York, Boston and Montreal Railway Company, and Daniel Butterfield as its receiver. Sackett alleged in his complaint that he brought the action "in behalf of himself and all other bondholders of the Lebanon Springs Railroad Company, similarly situated, who hold any of the two millions of dollars of the bonds of the Lebanon Springs Railroad Company, hereinafter referred to, and who shall be entitled to avail themselves of the benefit of this suit."

The complaint further alleged the mortgage, to secure plaintiff's bonds to the Union Trust Company of New York, the action to foreclose, the sale thereunder, and the non-payment of the purchase money to the trustee.

In brief, the Sackett suit was ostensibly a representative action for the benefit of bondholders, and sought, apparently, to charge Duncan, and his clerk, Hull, who took title at the foreclosure sale in this state, as trustees for the bondholders. The complaint further prayed for a receiver, a sale of the property, that all titles under the foreclosure sale should be declared void, and for such other relief as was just.

It will be observed that while the Sackett suit professed to seek the objects indicated, that it failed to bring before the court the necessary parties to render such a decree as was prayed for binding, viz.: The Union Trust Company of New

York, Duncan, Park, Hull, Lincoln and the trustees under the mortgages.

The record in the Sackett suit also discloses some other remarkable features.

In October, 1880, John Van Valkenburgh was appointed receiver. Intermediate the appointment of the receiver and Feb. 1st, 1881, holders of large amounts of both Lebanon Springs and Harlem Extension bonds petitioned the court in two separate proceedings to be made parties to the action, but both applications were denied. After the denial of these motions and in Feb., 1881, the receiver petitioned for instructions, and suggested that he issue certificates to be made a first lien for, among other things, the "settlement of unavoidable indebtedness of the company now existing." April 2d, 1881, after the coming in of the report of an expert to examine the railroad, and no one appearing except the receiver's counsel, the receiver was ordered to issue certificates of indebtedness to the amount of $350,000, and a referee was appointed "to hear and determine all existing claims against said Lebanon Springs Railroad Company." The receiver had previously borrowed twenty-five thousand dollars without authority of the court. The disposition made of a portion of the proceeds realized by the sale of the receiver's certificates will be considered later.

The Sackett suit did not reach final judgment until January, 1885, after a delay of between four and five years. Later in 1885 the referee under the judgment sold the property to William Foster, Jr., for $155,000.

The action at bar was begun in the Supreme Court of New York, April, 1887, by bondholders owning bonds of both the Lebanon Springs Railroad Company and the Harlem Extension Railroad Company.

The complaint brings in all the parties in interest; it seeks to enforce the foreclosure judgments and decrees of 1872 in the suits instituted by the Union Trust Company of New York both in Vermont and this state; it is also in the nature of a bill of review of the judgment in the Sackett suit and a

bill for relief against the judgment and proceedings in that suit as fraudulent; it also seeks the foreclosure of all junior liens.

The Special Term on Nov. 10th, 1891, rendered a judgment for the plaintiffs in this action, a sale of the property was made by the referee, and on the 16th of May, 1892, William Foster, Jr., received a deed as purchaser.

This judgment was affirmed by the General Term of the third department.

It now becomes necessary to consider the manner in which this appeal is presented.

In 1886, and before the case at bar was begun, one of the defendants in this action, the Central National Bank of Boston, on behalf of itself and all other holders of the receiver's certificates issued under the judgment in the Sackett suit, brought an action in the Supreme Court of New York against Foster and Hazard, the purchasers under the Sackett judgment and a corporation called the New York, Rutland and Montreal Railway Company, their grantee. The complaint in this action recited in detail the proceedings in the Sackett suit which led to the issuing of receiver's certificates, alleged that the Central National Bank of Boston held two hundred and fifty thousand dollars par value of the same, and that the balance of certificates were owned by divers persons and corporations.

It was also alleged that Hazard and Foster, when purchasing under the Sackett judgment, had assumed and agreed to pay the amount of unpaid principal and interest on said certificates of indebtedness after application of the purchase money.

It prayed that the certificates be declared a first lien on the property; that a receiver be appointed, property sold and Hazard and Foster adjudged to pay deficiency. This suit was removed into the United States Circuit Court on petition of the defendants on ground of citizenship of parties.

On the 24th of March, 1887, a decree was entered in favor of plaintiffs and a sale of the property ordered.

. Within thirty days after the entry of this decree the action at bar was begun and proceeded to judgment before sale under the Federal decree, which did not take place until 1892.

The defendants appealing from the judgment in the action at bar are the certificate holders, and the only questions presented are on their behalf.

It is urged by the learned counsel for the appellants that the judgment appealed from is erroneous in perpetually enjoining the appellants from proceeding with the sale of the premises under the decree of the Circuit Court of the United States; also, in authorizing the referee to determine who were the owners of receiver's certificates; also, on the merits, and that the motion to dismiss the complaint should have been granted.

The appellants' counsel insists that this case presents a conflict of jurisdiction between the state and Federal courts, and that the injunction clause of the judgment which perpetually enjoined and restrained the Central National Bank of Boston and other certificate holders from proceeding with the sale under the United States Circuit Court decree was an unlawful interference with the due and orderly procedure of a suit in which the Federal court had first acquired jurisdiction of the subject-matter. We have been cited to many cases in the state and United States courts dealing with this question of concurrent jurisdiction and declaring well-settled principles that govern the procedure under such circumstances.

We do not consider that such a question is presented in this case, but are of opinion, assuming that the Sackett suit is fraudulent, that it was competent for the Supreme Court of New York in the action at bar to bring before it all the parties in interest and to review the judgment in the Sackett suit, to vacate it as fraudulent and to deal as a court of equity with the holders of the receiver's certificates issued under the Sackett judgment. It must be admitted that the United States Circuit Court had jurisdiction of the subject-matter in the suit referred to, and that its decree was proper and binding upon the parties before it.

There is nothing in the judgment at bar that attacks the jurisdiction of the United States Circuit Court or questions the legality of its decree.

The suit in the United States Circuit Court was founded upon the judgment and orders in the Sackett suit, and sought as against the defendants therein to enforce their provisions and to secure to the certificate holders those rights as to priority of lien and personal judgment against Hazard and Foster, to which the Sackett judgment entitled them.

It was after the decree of the United States Circuit Court was rendered that the Supreme Court of New York, sitting as a court of equity, assumed jurisdiction of all the parties connected with this long and complicated contest, and undertook to adjust their rights and interests.

In so doing it rendered its judgment reviewing and reversing the Sackett judgment, setting aside the sale and referee's deed to Hazard and Foster under it and enjoining the certificate holders from proceeding with the sale under the United States Circuit Court decree.

It is thus apparent that if a court of equity, having jurisdiction of all the parties, was to give complete relief in dealing with the entire subject-matter, it must restrain the certificate holders from proceeding with the sale under the decree of the United States Circuit Court, as the foundations of that suit had been utterly swept away by the judgment in the action at bar. Unless this power existed in the Supreme Court of the state of New York it was powerless to adjust the conflicting interests submitted for its consideration.

We think it is clear, both upon principle and authority, that this power did exist, and that the sale under the decree of the United States Circuit Court was without force or effect as to the parties in that suit, as they proceeded in violation of the injunction contained in the judgment at bar. The setting aside of the judgment in the Sackett suit, upon which the suit in the United States Circuit Court was founded for fraud, was a new fact occurring since the decree in that court which gave jurisdiction in this action to enjoin proceedings thereon.

Judge STORY (2 Eq. Ju. § 899, 13th ed.) uses this language in regard to foreign courts, but it is equally applicable to state and Federal courts, viz. :

"Although the courts of one country have no authority to stay proceedings in the courts of another, they have undoubted authority to control all persons and things within their own territorial limits.  When, therefore, both parties to a suit in a foreign country are residents within the territorial limits of another country, the courts of equity in the latter may act *in personam* upon those parties, and direct them by injunction to proceed no further in such suit.

"In such a case these courts act upon acknowledged principles of public law in regard to jurisdiction.

"They do not pretend to direct or control the foreign court, but, without regard to the situation of the subject-matter of the dispute, they consider the equities between the parties and decree *in personam* according to those equities and enforce obedience to their decrees by process *in personam.*"

This is the acknowledged rule in England and this country.

In the case of *Barry* v. *Brune,* reported below in 8 Hun, 395, and affirmed by this court (71 N. Y. 262), this rule was acted upon, and the Supreme Court of this state enjoined the parties before it from collecting a judgment recovered in the United States Circuit Court for the district of Maryland. (See, also, *Mead* v. *Merritt,* 2 Paige, 404; *Dehon* v. *Foster,* 4 Allen, 550; *Savage* v. *Allen,* 54 N. Y. 458; *Harlem R. R.* v. *Haws,* 56 id. 175; *N. Y. & N. H. R. R. Co.* v. *Schuyler,* 17 How. Pr. 464, 468; *Carron Iron Co.* v. *Maclaren,* 5 H. L. C. 439, and English cases there cited.)

Passing from this point it should be remembered that the suit of the Central National Bank of Boston was begun in the Supreme Court of New York and was removed into the United States Circuit Court on the ground of citizenship of parties.

All that can be claimed for the decree of the latter court is that it be accorded the same force and effect as a similar judgment of the Supreme Court of New York. (*Dupasseur* v. *Rochereau,* 21 Wall. 130, 135; *Crescent Live Stock Co.* v.

*Butchers' Union*, 120 U. S. 141, 147.)    It cannot be doubted that if the Central National Bank of Boston had proceeded to judgment in the Supreme Court of New York that the judgment in the case at bar would have dealt with that judgment precisely as it did with the decree in the United States Circuit Court.

We will now consider the disposition of this case by the court below, on the merits.

An examination of the evidence satisfies us that the findings of fact are abundantly sustained.

The fifth and sixth findings of fact are to the effect that the suit of Sackett was neither brought nor conducted for the purpose of realizing the property to the owners of the Lebanon Springs bonds, but that it was brought and conducted for the purpose of realizing out of the property certain individual claims of Sackett and Tilden in preference to, and at the expense of the other Lebanon Springs bondholders, which claims, if valid, were not liens upon the property and were behind the mortgage.    It appears that these claims exceeded thirty thousand dollars, and the aggregate fees of counsel and receiver were about sixty-one thousand dollars, all of which were paid out of the proceeds realized by the sale of receiver's certificates.

The failure to bring in the necessary parties in order to render binding any judgment that might be obtained in the Sackett suit, is sufficient of itself to stamp the entire proceeding as colorable and fraudulent.    There was in fact no real contest, and the rights of bondholders were ignored.

The absence from the record of the Union Trust Company of New York, of Park, Duncan, Hull, Lincoln and the trustees under the other mortgages than those represented by the Union Trust Company renders the Sackett suit a legal absurdity.    (*Western R. R. Co.* v. *Nolan*, 48 N. Y. 513; *Hallett* v. *Hallett*, 2 Paige, 15–22.)

We do not deem it necessary to discuss in detail the legal points raised attacking the jurisdiction of the court and the form of the action.

We think this suit is maintainable under established principles of equity jurisprudence.

The rule is well settled that courts will set aside as a nullity a judgment, decree or award obtained by fraud. (*Hackley* v. *Draper*, 60 N. Y. 88 ; *State of Michigan* v. *Phœnix Bank*, 33 id. 8 ; *Dobson* v. *Pearce*, 12 id. 156 ; *Wright* v. *Miller*, 8 id. 9 ; *Whittlesey* v. *Delaney*, 73 id. 571 ; *Tiernan* v. *Wilson*, 6 Johns. Ch. 411 ; *Campbell* v. *Railroad Co.*, 1 Woods, 368.)

This action was promptly begun within two years after the sale in the Sackett suit, and is to be regarded as a bill for relief against the Sackett judgment and all proceedings in that suit as fraudulent. It is not necessary to consider it as strictly a bill of review nor to discuss the law bearing upon suits of that nature.

The action was properly and seasonably brought.

There is the further question whether the certificate holders have any just ground to complain of the judgment as entered.

By its provisions a referee was appointed to ascertain who were the owners of the Lebanon Springs bonds and which of the bonds were actually in the Sackett suit. It further provided that the referee to sell should pay the net amount realized to the Lebanon Springs bondholders, except that as to the proportions coming to the owners of such bonds as were in the Sackett suit, he should pay so much thereof to the holders of the receiver's certificates, and the balance, if any, to the holders of such bonds.

The bondholders of the Lebanon Springs Railroad Co. duly represented in the Sackett suit were, of course, bound by the order and judgment authorizing the issue of certificates ; the remaining bondholders were in no way affected by the judgment.

It is, therefore, apparent that the certificate holders have been as fully protected by the judgment in the case at bar as was possible. There are no exceptions that should lead to reversal.

The judgment appealed from should be affirmed, with costs.

All concur, except GRAY, J., not voting.

Judgment affirmed.