(24 Misc. Rep. 344.)

STEVENS et al. v. CENTRAL NAT. BANK OF BOSTON et al.

(Supreme Court, Special Term, Ulster County. July, 1898.)

1. COURTS—CONCLUSIVENESS OF JUDGMENT OF UNITED STATES SUPREME COURT.

Where a case has been decided by the supreme court of the United States, and remanded to the court whose judgment is reversed, whatever was before the supreme court and disposed of by its decree is finally settled, and the subordinate court cannot vary or review it, or give any other relief, further than to settle so much as has been remanded.

2. COSTS IN EQUITY—DISCRETION OF COURT.

Where an equitable action is appealed from the supreme court, and reversed and remanded, the power of granting or withholding costs does not depend on the statute or the final determination of the cause, but rests in the discretion of the court.

3. APPEAL—DECISION—SUBSEQUENT PROCEEDINGS BELOW—COSTS.

Where a decision of the supreme court sustained at general term and by the court of appeals is reversed by the supreme court of the United States, and remanded to the subordinate court for further proceedings not inconsistent with the judgment, the mandate being silent as to costs, the subordinate court has power to grant costs and an additional allowance, in the same manner as if the record had never been removed from its files.

4. COSTS—EXTRA ALLOWANCE—AMOUNT.

Under provisions in the Code that in a difficult and extraordinary case, where a defense has been interposed, the court may award to a party a sum not exceeding 5 per cent. of the value of the subject-matter, nor in the aggregate $2,000, where the amount involved was $250,000, and the cause was of great importance and difficulty, and was carried to the supreme court of the United States, and reversed, an allowance of $2,000 is not excessive.

Suit by Aaron R. Stevens and others against the Central National Bank of Boston and others. Application for judgment on the reversal of the judgment of the court of appeals and supreme court by the supreme court of the United States, and for costs and an additional allowance. Granted.

Edward Winslow Paige, for plaintiffs.

Charles E. Patterson and Abraham Lansing, for defendants.

CLEARWATER, J. The Lebanon Springs Railroad Company was organized in 1852, under acts of the legislatures of New York and Vermont. In July, 1867, it executed to the Union Trust Company of New York a mortgage to secure bonds to the amount of $2,000,000. In January, 1870, it consolidated with the Bennington & Rutland Railroad Company, under the name of the Harlem Extension Railroad Company. The new company, in April, 1870, executed to the Union Trust Company a mortgage to secure bonds to the amount of $4,000,000, $1,500,000 of which were sold on the market, the remaining $2,500,000 being reserved to take up outstanding bonds of the Lebanon Springs and Bennington & Burlington Companies (an exchange which never took place). In February, 1872, the interest upon the bonds of the Lebanon Springs Company not having been paid, the trust company began an action in the supreme court of New York to foreclose that mortgage, and filed bills in the court of chancery in Vermont to foreclose both mortgages. While these

actions were pending, and in December, 1872, the Harlem Extension Railroad Company and the Pine Plains & Albany Railroad Company consolidated their property and capital stock, under the name of the Harlem Extension Railroad Company, which subsequently formed a consolidation with the New York, Boston & Northern Railroad Company, forming a new company, under the name of the New York, Boston & Montreal Railway Company. The action of foreclosure in the supreme court of New York proceeded to judgment, and a decree directing the sale of the property of the Lebanon Springs road in New York, and its franchises in Vermont, was granted; and in January, 1873, the property was sold by Charles S. Fairchild, referee, to William Butler Duncan, as the representative of James C. Hull, for $100,000. Decrees of foreclosure of the other mortgages were also granted, and the property of the road in Vermont was sold by a master in chancery to Charles G. Lincoln for $50,000. Hull and Lincoln executed to Duncan and Trenor W. Park a bond for $5,000,000, and a mortgage to secure the same on all the roads, and then conveyed the property subject to the mortgage to Duncan and Park. The New York, Boston & Montreal Railroad Company paid $807,077.05 on account of the moneys due on the bond and mortgage. The remainder has not been paid. In March, 1873, the New York, Boston & Montreal Railway Company executed a new mortgage for $12,250,000 to Seligman, Sherman, and Brown, as trustees, covering the above-mentioned railroad and other properties, and, on the 1st of April thereafter, executed still another mortgage on the railroads and other things, for $12,750,000, to the New York Loan & Indemnity Company, as trustee. Enough bonds under these mortgages were sold in the market to realize $6,000,000, which were received by Seligman and Brown. The new road subsequently became insolvent, and a receiver was appointed. Under the direction of the supreme court of this state, he issued receiver's certificates for $350,000, dated April 2, 1881, bearing interest at the rate of 6 per cent. The defendant the Central National Bank of Boston became the owner and holder of $250,000 of the certificates, and began an action in this court in April, 1886, on behalf of itself and other holders of the certificates, asking that the unpaid principal and interest of the certificates be adjudged to be a lien upon the railroad property, for a decree of foreclosure and sale, and that the amount due it and the other holders be paid from the proceeds. After issue was joined, the action was removed into the circuit court of the United States for the Northern district of New York. A decree was granted by that court on the 24th of March, 1887, adjudging the bank to be the holder and owner of certificates to the amount of $250,000, upon which was due it that amount, with interest at the rate of 6 per cent. per annum from the 1st day of January, 1886, and directing the sale of the railroad property, which was sold on the 23d day of March, 1892. In December, 1890, the plaintiff Stevens and others, for themselves and other holders of bonds issued by the Lebanon Springs and Harlem Extension Companies, began an action in the supreme court of this state against the Union Trust Company, Hull, Duncan, the administrator of Park, the New York, Boston & Montreal Railway Company, Seligman and Brown,

the defendant the Central National Bank of Boston, and others. In the complaint in that action the history of the several legal proceedings whereby the road, property, and franchises of the various companies were consolidated was set forth, as was the action brought by the Central Bank of Boston and the proceedings therein. The plaintiffs asked, among other things, that it be adjudged that the certificates issued by Van Valkenberg as receiver were beyond the power of the supreme court of New York to issue, and were of no validity except to bind the interest represented by certain bonds which were specified, and prayed that all the defendants be enjoined from interfering with any part of the railroad property. Upon the first trial, judgment was rendered in favor of the defendants, dismissing the complaint on the merits. On appeal, that judgment was reversed by the general term, and a new trial ordered. Stevens v. Trust Co., 57 Hun 498, 11 N. Y. Supp. 268. At the new trial, judgment in favor of the plaintiffs was rendered, which was affirmed by the general term (Stevens v. Bank, 69 Hun, 460, 24 N. Y. Supp. 219), and afterwards by the court of appeals (Id., 144 N. Y. 50, 39 N. E. 68). The Central Bank of Boston then sued out a writ of error to the supreme court of the United States. That court, at its February, 1898, term, reversed the judgments of the supreme court of New York and of the court of appeals so far as they affected the Central National Bank of Boston and other holders of the receiver's certificates, whose right as such holders were adjudged by the circuit court of the United States. An elaborate opinion was written by Mr. Justice Shiras, which is reported in 169 U. S. 432, 18 Sup. Ct. 403. The court awarded costs to the Central Bank of Boston to the amount of $1,047.70, and remanded the record to the court of appeals of this state for further proceedings not inconsistent with the judgment and opinion of the federal court. The mandate, with the record, having been sent to the court of appeals, the Central Bank moved in May, 1898, that the judgment of the supreme court of the United States become and be the judgment of the court of appeals; that the judgment of the supreme court of the state of New York appealed from to the court of appeals be reversed, with costs; that the remittitur of the court of appeals be sent to the supreme court of New York; that the defendants in whose behalf the writ of error was taken to the supreme court of the United States have judgment as directed by that court, and for their costs, including the costs of the supreme court of the United States. The court of appeals contented itself with remitting the entire record, together with the mandate of the supreme court of the United States, to this court, for action; omitting to give any other direction or suggestion, and denying to the plaintiffs in error (the defendants here) costs in that court. The mandate of the supreme court of the United States, the remittitur of the court of appeals, with the record, are now here; and the Central Bank of Boston asks for judgment in acordance with the mandate of the federal court for the costs awarded in that court, for the taxable costs of the action in the supreme court of this state, and for an additional allowance of 5 per cent., or so much of it as the court can grant, upon the amount involved.

There is no room for discussion as to the form of the judgment to be awarded, which must be in exact accord with the decision of the supreme court of the United States. When a case has once been decided by that court, and remanded to the court whose judgment is reversed, whatever was before the federal court and disposed of by its decree is considered as finally settled. The subordinate court is bound by the decree as the law of the case, and must carry it into execution according to the mandate. It cannot vary it or examine it for any other purpose than execution, or give any other or further relief, or review it, even for apparent error upon any matter decided on appeal, or intermeddle with it further than to settle so much as has been remanded. In re Sanford Fork & Tool Co., 160 U. S. 247, 16 Sup. Ct. 291; Railway Co. v. Anderson, 149 U. S. 237, 13 Sup. Ct. 843; Sibbald v. U. S., 12 Pet. 488–492. Should the subordinate court fail to give full effect to the mandate, its action may be controlled by a writ of mandamus. In re City Nat. Bank of Ft. Worth, 153 U. S. 248, 14 Sup. Ct. 804; Bank v. Hunter, 152 U. S. 512, 14 Sup. Ct. 675; In re Washington & G. R. Co., 140 U. S. 91, 11 Sup. Ct. 673.

The further questions arise whether this court has the power to grant costs and an additional allowance; whether, having the power, it should exercise it in a case where its own judgment, sustained at general term and by the court of appeals, has been reversed by the supreme court of the United States, and, if allowed, the basis upon which the additional allowance should be computed. The action being in equity, if the power exists the granting or withholding of costs does not depend upon the statute; nor does it absolutely depend upon the final determination of the cause, but it rests in the discretion of the court, in this as in all other things, to be exercised in accord with well-settled principles, not capriciously. The supreme court of the United States having sent the record with its mandate to the court of appeals, and that court having remitted it to this, it is our duty to give full effect to the judgment of the federal tribunal; and, unless there be some limitation or express provision in the mandate or remittitur to the contrary, we must, of necessity, have the same power to deal with all incidental questions, including that of awarding or denying costs, in the same manner as if the record had never been removed from our own files; and, as both the mandate and remittitur are silent on this subject, it must follow that the power exists. Mason v. Pewabic Co., 153 U. S. 361, 14 Sup. Ct. 847; Hinckley v. Morton, 103 U. S. 764; Nashua & L. R. Corp. v. Boston & L. R. Corp., 5 U. S. App. 97, 2 C. C. A. 542, and 51 Fed. 929. This being so, should they be allowed? While it is true that the Central Bank has finally succeeded as against the view of the courts of this state, it has none the less been successful. A proper tenacity of opinion is commendable, but any action tending to create the impression of judicial resentment is at variance with the best traditions of a tribunal to whose arbitrament is intrusted the important questions with which our supreme court is daily, even hourly, called upon to deal. In a case involving so large an amount, and so great responsibility, care, and labor upon the part of counsel, the propriety of awarding costs and an additional allowance would hardly be seriously questioned had the judgment

here been with the defendant in the first instance; and, in view of the fact that an adverse decision upon this question would be final, to deny what is generally regarded by the bench and bar as one of the legitimate fruits of victory would be an ungracious, perhaps harsh, exercise of the great discretionary power of the court. The Code provides that in any difficult and extraordinary case, where a defense has been interposed, the court may, in its discretion, award to any party a sum not exceeding 5 per centum upon the sum recovered or claimed, or the value of the subject-matter involved, not exceeding in the aggregate $2,000. The amount involved, so far as the defendant the Central Bank of Boston was concerned, was the sum adjudged to be due it, viz. $250,000, with interest. Views as to the adequacy of compensation for legal services vary greatly. Mental attitude, previous experience, and environment are all factors tending to mold the opinion of clients and the bench upon this delicate but important subject. As a rule, the bar has not suffered from excessive modesty in presenting its claims, nor has the bench been unduly prodigal in allowing them. That this litigation was important is evident. That the cause was both difficult and extraordinary cannot be disputed. I said, when Lead Co. v. Dauchy, 22 Misc. Rep. 372, 49 N. Y. Supp. 379, was before me, that the statute should receive a fair, even a liberal, construction, and that in important and substantial litigation a proper allowance should be made, due regard being had to the situation of the defeated party. Considering the importance and difficulty of this cause, the eminence and ability of counsel retained, and the final success of the defendant, an additional allowance of $2,000 does not seem to me excessive; and that sum, with the other taxable costs and those allotted by the supreme court of the United States, is awarded, and may be taxed.