is assailable only for error, by appeal. No one may otherwise question its force as to a thing it passed upon, and a purchaser under its judgment takes title so far as the parties upon whom it operates can give one. Nor can a nonexistent person, possibly born after the judicial sale, and possibly surviving a parent dying before the youngest uncle or aunt attained the age of 21, repudiate the title under the judgment. He takes by representation, limited though it is, subject to the burdens legally imposed in proceedings where he could only act through his parent representative, and especially where his right to the corpus remains unchanged. Kent v. Church of St. Michael, 136 N. Y. 10–17, 32 N. E. 704. The right of a party to appeal from this judgment, even if the time possibly carried along by stipulation has not expired, is no objection to title gained by the sale. Acts done in good faith under an unstayed judgment are valid. King v. Harris, 34 N. Y. 330; Id., 30 Barb. 471.

There is another view, strengthening the plaintiff's position, which occurs to the court. The title of Barbara Schwab, which was adjudged to be that of a trustee in the action of Kaiser against Schwab, the judgment in which we have been considering, was derived by her from a sale in foreclosure upon a mortgage which was a lien on the lands at the time of the testator's death. But for the judgment in Kaiser against Schwab, she would now be the absolute owner. No other evidence assails her title. As against her, the purchaser under that judgment gets good title. No other person can now or hereafter claim an interest in her husband's property through the force of that judgment, and repudiate the sale under it, found necessary by the charges on it and interests involved. And through the original foreclosure suit, and the second action restoring to the children in a modified way the title taken, there flows to the plaintiff from the original mortgage a title not now to be gainsaid. The variation in the reference to the terms of the lien resting upon the premises at the time of the contract between plaintiff and defendants is not substantial, and was cured by the substitution of a mortgage conforming to the contract. Let judgment go for the specific performance prayed, with costs.

Judgment for specific performance, with costs.

MONTANA ORE–PURCHASING CO. v. BUTTE & B. CONSOL. MIN. CO.

(Supreme Court, Appellate Division, First Department. November 10, 1899.)

1. UNITED STATES COURTS—INTERFERENCE BY STATE COURTS.
  A state court will not enjoin a mine owner from depositing slag on adjoining lands where he asserts a right to do so under a contract with the adjoining owner and an adjudication of the United States circuit court, and there is a subsequent suit in equity pending in such United States court where the existence of such right is in issue.

2. COSTS—SUCCESSFUL PARTY—APPEAL.
  On reversing an order denying a motion to vacate a preliminary injunction the motion may be granted without costs, where appellant was guilty of delay in making the motion.

Appeal from special term, New York county.

Action by the Montana Ore-Purchasing Company against the Butte & Boston Consolidated Mining Company. From an order denying a motion to vacate a preliminary injunction, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Louis Marshall, for appellant.

Franklin Bien, for respondent.

BARRETT, J. The plaintiff, a corporation organized under Montana laws, sues the defendant, a domestic corporation, for the specific performance of a contract executed the 16th day of November, 1892, between one Heinze, the plaintiff's predecessor, and the Butte & Boston Mining Company, the defendant's predecessor. By this instrument the Butte & Boston Mining Company leased to Heinze a tract of land in Silverbow county, Mont., with the right to the lessee to store water upon certain adjoining land of the lessor, "and also all right to dump tailings from any and all works erected on the leased premises by the second party (the lessee) onto any ground of the party of the first part" (the lessor), within certain designated limits. The complaint and affidavit upon which the injunction was granted allege that the defendant threatens to prevent the plaintiff from exercising its rights under the easement thus conferred, and that, if this is permitted, irreparable injury will result to the business of the plaintiff. The order directs that the defendant, its agents and servants, be "restrained and enjoined from in any manner interfering with the plaintiff * * * in the enjoyment and use by the plaintiff of the property referred to in the complaint, * * * and they, and each of them, are hereby restrained and enjoined from in any way or manner interfering (whether by action or otherwise) with the plaintiff's right of the use of the property, * * * and in depositing its tailings (including slags and other refuse resulting from the mining operations of minerals)," etc. By the affidavits it appears, practically without contradiction, that the plaintiff has erected a smelter upon the leased premises, and a concentrator upon adjoining land. By the concentrator the ore is crushed, and the refuse washed away. What remains is then heated in the smelter, and the metal is thus separated from the dross, which is called "slag." The plaintiff allows the water from the concentrator to flow upon the land which is subject to the easement, where it is clarified, so that it may be again used. The refuse mingled with the water is thus deposited upon the defendant's land. The plaintiff also deposits thereon slag from the smelter. The defendant denies the plaintiff's right to do either of these things, claiming that the slag is not "tailings," and that the refuse from the concentrator may not be deposited on the adjoining land because the concentrator is not upon the leased premises. In rebuttal the plaintiff alleges facts tending to show that the parties contemplated such a use of the property. In August, 1897, the defendant brought an action against the plaintiff in the circuit court of the United States for the district of Montana to

recover damages for trespassing upon the land in question, and depositing débris thereon. The judgment decided that the land belonged to the present defendant (the plaintiff there) subject to the easements created by the contract, among which was "the right to dump tailings (which, under the finding of the jury herein, is construed and hereby adjudged to mean slag also) from any and all works now erected or which may hereafter be erected on the said leased premises" upon the land described in the contract. After the rendition of this judgment, the defendant here (plaintiff there), in accordance with the federal practice in Montana, undertook to bring on for hearing an equity suit which it had begun in the same court to prevent the plaintiff here (defendant there) from depositing on its property refuse from the concentrator. Thereupon the plaintiff brought the present action.

We think it was plainly erroneous directly or indirectly to enjoin the prosecution of the Montana actions. And such was clearly the effect of the injunction. Undoubtedly the courts of this state may, in a proper case, restrain the parties to an action in a federal court from proceeding therewith. Stevens v. Bank, 144 N. Y. 50, 39 N. E. 68. But absolutely nothing is shown here to justify such a course. The United States circuit court had full jurisdiction of the parties and the subject-matter, and no attempt is made to prove any fact which would authorize our courts to enjoin action therein. We think, further, that in its whole scope the injunction was unauthorized. The respective rights of the parties have been at least partly settled in the action at law brought in Montana. The defendant claims that the judgment precludes the plaintiff from depositing the refuse from the concentrator upon the adjoining land, and is attempting to prosecute an equitable action, based upon such judgment, to obtain the proper relief. The judgment already rendered is res adjudicata. If there is any doubt concerning its scope or effect, all questions on that head will be, and properly should be, settled in the equity suit. One of the parties to that controversy cannot be permitted to invoke the aid of our courts either to pass anew upon the construction of the contract or to interpret the decision already given, when that decision is about to be construed, and full effect given to it, by the very court which rendered it. As our courts, under these circumstances, are in no position to define and enforce the rights of the parties under the contract, it necessarily follows that any injunction based thereon was unauthorized.

While we must condemn the delay which attended the making of the present motion, yet we do not think that the defendant has been guilty of such laches as should prevent it from asserting its legal right to resist the intervention of our courts in the present controversy.

The order appealed from should be reversed, with $10 costs and disbursements, and the motion to vacate granted, but, in view of the defendant's delay in moving, without costs. All concur.