ERWIN DAVIS, Appellant, v. ELLEN S. CORNUE and JOSHUA G.
CORNUE, her Husband, Respondents, Impleaded with Others.

1. FOREIGN JUDGMENT — RESTRAINT OF ENFORCEMENT. A court of
one state may, where it has jurisdiction of the parties, determine the
question whether a judgment between them, rendered in another state,
was obtained by fraud, and, if so, may enjoin the enforcement of it,
although its subject-matter is situated in such other state.

2. FOREIGN DECREE OF DISTRIBUTION OF DECEDENT'S ESTATE —
RESTRAINT OF ENFORCEMENT — JURISDICTION. As against persons of
whom it has jurisdiction, the Supreme Court has power to entertain an
action in equity, brought by one claiming an interest in a decedent's
estate, for a judgment *in personam* to restrain them from receiving it in
pursuance of a decree of a Probate Court of another state distributing it
among the defendants and others, where the decree was obtained by fraud,
although the property is largely without this state.

3. APPEAL — QUESTION CERTIFIED FOR REVIEW. On the certification
by the Appellate Division, under section 190 of the Code of Civil Pro-
cedure, of the question of law whether the Supreme Court has jurisdic-
tion of an action for an injunction which it has refused to entertain, the

Court of Appeals cannot determine whether the Supreme Court might in its discretion have declined to entertain jurisdiction.

*Davis* v. *Cornue,* 2 App. Div. 220, reversed.

(Argued October 19, 1896; decided December 15, 1896.)

APPEAL, by certification, from an interlocutory judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 21, 1896, which reversed an interlocutory judgment of the Special Term overruling a demurrer to the complaint.

The nature of the action and the facts, so far as material, are stated in the opinions.

*Walter S. Logan* and *M. E. Harby* for appellant. The demurring defendants, by joining with the heirs of John A. Davis in an effort to defraud Erwin Davis, share in the liability of the heirs of John A. Davis. (*Lewis* v. *Gollner,* 129 N. Y. 227; *N. Y. B. N. Co.* v. *H. B. N. Co.,* 83 Hun, 593.) The plaintiff has no adequate remedy at law. (*Saltus* v. *Belford Co.,* 133 N. Y. 499, 504; *Holmes* v. *Davenport,* 27 Abb. [N. C.] 75; Bispham on Equity, § 436; *Brinkerhoff* v. *Brown,* 6 Johns. Ch. 151; *N. Y. & N. H. R. R. Co.* v. *Schuyler,* 17 N. Y. 608; *Sinsheimer* v. *U. G. Workers,* 26 N. Y. Supp. 152; *T. A. R. R. Co.* v. *Mayor, etc.,* 54 N. Y. 159; *Erie Ry. Co.* v. *Ramsey,* 45 N. Y. 647; *Lawrence* v. *Manning,* 9 N. Y. Supp. 223; *Babcock* v. *Arkenburgh,* 22 Wkly. Dig. 478; *N. P. Bank* v. *Goddard,* 131 N. Y. 494.) This is not an attempt to reverse the judgment of a court of the state of Montana. (*Stevens* v. *C. Nat. Bank,* 144 N. Y. 50.) The decree gives no additional force or authority to the stipulations and agreements. (Montana Code, § 2326.) A decree entered upon fraudulent stipulations and agreements is tainted with fraud, and as such may be enjoined by this court. (*Stevens* v. *C. Nat. Bank,* 144 N. Y. 50; *State* v. *Hinkle,* 37 Ark. 532; *Hayden* v. *Hayden,* 46 Cal. 332; *Carrington* v. *Holabird,* 17 Conn. 530; *Dryan* v. *McCann,* 60 Ga. 353; *Ogden* v. *Larrabee,* 57 Ill. 389; *Cowin* v. *Toole,* 31 Iowa, 513; *May-*

*berry* v. *McClurg*, 51 Mo. 256; *Bresnehan* v. *Price*, 57 Mo. 422; *Hahn* v. *Hart*, 12 B. Mon. 426.) The fact that the decree is that of a court in a sister state does not affect this court's restraining power over it for fraud where there is an allegation of fraud. (*Stevens* v..*C. Nat. Bank*, 144 N. Y. 60; *Foster* v. *Vassal*, 3 Atk. 589; *Wood* v. *Warner*, 15 N. J. Ch. 81; *Penn* v. *Baltimore*, 1 Ves. Sr. 444; *Lazier* v. *Westcott*, 26 N. Y. 146; *Massie* v. *Watts*, 6 Cranch, 148; *Arglasse* v. *Muschamp*, 1 Vern. 75; *Kildare* v. *Eustace*, 1 Vern. 418; *Kellar* v. *Carteret*, 2 Vern. 494; *Bank of Australia* v. *Nias*, 4 Eng. L. & Eq. 252.) Plaintiff has no adequate remedy in the Probate Court of Montana. (*Britton* v. *Phillips*, 1 Dem. 57; *Bonfanti* v. *Deguerre*, 3 Bradf. 429; *Hitchcock* v. *Marshall*, 2 Redf. 174; *In re Seabold*, 19 Daily Reg. 135; Geary's Prob. Law [2d ed.], 17; Rice on Am. Prob. Law, 5, 13; Woerner's Am. Law of Adm. 323, 340, 341, 345; *Bush* v. *Lindsey*, 44 Cal. 125; *Bernard* v. *Wilson*, 74 Cal. 517; *Cheever* v. *Poy*, 82 Cal. 72; *In re Wagner*, 119 N. Y. 36; *Sanders* v. *Soutter*, 126 N. Y. 200; *Bevan* v. *Cooper*, 72 N. Y. 328.) The demurrer is only upon two grounds, and all other possible objections are, therefore, waived. (Code Civ. Proc. §§ 490, 499; *F. F. Ins. Co.* v. *Baldwin*, 37 N. Y. 648; *People ex rel.* v. *Crooks*, 53 N. Y. 648.) A demurrer will not lie because the plaintiff has not asked for the proper relief. If, under the facts stated, he has any cause of action, or is entitled to any relief, the demurrer will be overruled. (*Muldowney* v. *M. & E. R. R. Co.*, 42 Hun, 444; *Kimberley* v. *Sells*, 3 Johns. Ch. 467; *Wetmore* v. *Porter*, 92 N. Y. 76; *Stuyvesant* v. *Mayor, etc.*, 11 Paige, 415; *Pierson* v. *McCurdy*, 61 How. Pr. 134; *Lorillard* v. *Clyde*, 86 N. Y. 384.)

*Charles E. Rushmore* for respondents. In determining the questions involved the court will only consider the specific prayer for relief set forth in the complaint. (*Edson* v. *Girvan*, 29 Hun, 423; *Swart* v. *Boughton*, 35 Hun, 281.)

Martin, J.   In March, 1890, Andrew J. Davis died in the
state of Montana, possessed of a large amount of real and
personal property in that state, in the state of New York and
elsewhere within the United States.   He left him surviving
the plaintiff, who was a brother, and the defendants, who,
with the exception of Anson Malby, were his brothers and
sisters, or the surviving children of deceased brothers and
sisters.   The plaintiff and defendants Ellen S. Cornue, Joshua
G. Cornue and Harriet R. Sheffield are residents of this
state.   Other of the defendants reside elsewhere.

At the time of his death Andrew J. Davis was supposed
have been unmarried and to have died intestate, but soon
after one Thomas J. Davis appeared and claimed to be his son
and sole heir.   In view of this and other apprehended claims
of a like nature, two of the brothers and three of the sisters
of the decedent entered into an agreement with the plaintiff,
whereby the latter agreed to institute, prosecute and defend
the necessary actions to establish the rights of the parties
against Thomas J. Davis and all others making like claims,
and to pay all the necessary expenses of such litigation, not
exceeding $200,000.   In consideration of the agreement of
the plaintiff, it was agreed by the other parties that the
plaintiff should receive one-half of the amount that each
was or should become entitled to recover from the estate
of Andrew J. Davis.   The plaintiff was to receive such
shares directly from the estate or its legal representative.
Shortly after this agreement was made, an alleged will of
Andrew J. Davis was found, by which John A. Davis, a
brother of the testator and one of the parties to the agree-
ment, was made sole residuary legatee of the testator, subject
to three legacies which need not be considered.   Upon the
discovery of this will, John A. Davis executed a new agree-
ment to the plaintiff, which recited the former contract, and
provided that it should be applicable to the estate coming to
him under the will of Andrew J. Davis, so far as the plaintiff
was concerned.

Subsequently John A. Davis offered the will for probate in

the District Court of the second judicial district in the county of Silver Bow in the state of Montana. The probate of the will was contested by four of the defendants who were not parties to the plaintiff's agreement. While the contest was pending, and in January, 1893, John A. Davis died intestate, leaving a widow and several children. His son John E. Davis was appointed administrator of his estate, and substituted as proponent of the will of Andrew J. Davis. At this stage of the proceeding, and while the contest was still pending, the defendants, with full knowledge of the two agreements mentioned, entered into a fraudulent and corrupt agreement or conspiracy to divide the assets and proceeds of the estate of Andrew J. Davis among themselves, and to deprive the plaintiff and the defendants Calvin P. Davis, Diana Davis, Harriet Wood and Elizabeth S. Bowdoin of their rightful shares and interests therein. In pursuance thereof it was stipulated by and between the defendants that the defendants Henry A. Root, Sarah M. Cumming, Harriet R. Sheffield and Henry A. Davis should withdraw their objections to the probate of the will, discontinue their contest and allow the same to be admitted to probate, thereby cutting off the rights of the plaintiff and the defendants Calvin P. Davis, Diana Davis, Harriet Wood and Elizabeth S. Bowdoin, as next of kin and heirs at law of Andrew J. Davis. It was also stipulated that the estate should be divided among the defendants Ellen Cornue, Joshua G. Cornue, Harriet R. Sheffield, Henry A. Davis, Andrew J. Davis, Junior, John E. Davis, Edward A. Davis, George W. Davis, Charles G. Davis, Maurice A. Davis, Thea Jane Davis, Sarah M. Cumming, Mary Louise Dunbar, Elizabeth S. Ladd and Charles H. Ladd in proportions that need not be stated. In pursuance of such fraudulent stipulation the will was admitted to probate and a decree of distribution entered in accordance with its terms, dividing the estate among persons not mentioned in the will, and excluding the plaintiff and other of the defendants from any share or interest therein, either under the agreements mentioned or as heirs or next of kin of Andrew J. Davis.

Neither the plaintiff nor any of the defendants excluded in the division of the estate of Andrew J. Davis was a party to the proceeding in which such decree was made. The court making the decree had no jurisdiction to do more than to reject or admit the will to probate and administer the estate according to its terms. All further proceedings were null and void. The defendants have little, if any, property outside of their interest in that estate, and, except for such interest, they have no financial responsibility. A portion of them reside in various states other than the state of New York. If the estate is divided among them according to the decree, the interests and shares of the plaintiff and certain of the defendants will become dissipated and lost, and it will be impossible for them to recover their rights, secure their share thereof or to save themselves from being effectually defrauded and deprived of their portion thereof ; a multiplicity of actions will be required to recover such interest, and even if such actions are brought they will be wholly insufficient and inadequate to accomplish that purpose, and, therefore, great and irreparable injury to them would be the result.

The foregoing is a brief statement of the substance of the complaint and of the facts admitted by the defendants' demurrer. The relief sought by this action is that the defendants, who, under the decree mentioned, are to receive or distribute this property, be enjoined from distributing it, or taking or receiving any part thereof, without recognizing or providing for the rights of the plaintiff and the excluded defendants until those rights shall be determined.

The questions of law which are certified to this court for determination are : 1. Whether the Supreme Court had jurisdiction of this action ; and 2. Whether the complaint states facts sufficient to constitute a cause of action. Thus, if the court might have declined to entertain jurisdiction, or might, in its discretion, have refused to restrain the defendants served from accepting and disposing of any portion of the estate,

23

still, as no such question has been certified to this court, it is not before us for determination, as this court has power only to answer the questions thus presented. (Code, sec. 190.)

In determining these questions all the allegations stated in the complaint, as well as all that can be implied from them by reasonable and fair intendment, must be regarded as admitted by the defendants' demurrer. When this rule is given its proper effect it becomes obvious that the complaint in this action is not subject to the objections urged against its sufficiency. That the court had jurisdiction of the persons of the demurring defendants and of the plaintiff cannot be denied. It in no way appears that the other defendants have not been or may not be properly served with process in this action, and the court thus obtain jurisdiction of all the parties. Moreover, a portion of the property belonging to the estate of Andrew J. Davis is within the jurisdiction of the courts of this state.

It is a familiar rule that a court of equity may render a decree in regard to property, even when in another state or country, and in effect stay the execution of a foreign judgment, or a judgment recovered in a Federal court, when the parties are within the jurisdiction of the court. Pomeroy, in his work on Equity Jurisprudence (Vol. 3, § 1318), says : " The jurisdiction to grant such remedies is well settled. Where the subject-matter is situated within another country or state, but the parties are within the jurisdiction of the court, any suit may be maintained and remedy granted which directly affect and operate upon the person of the defendant and not upon the subject-matter, although the subject-matter is referred to in the decree, and the defendant is ordered to do or refrain from certain acts towards it, and it is thus ultimately, but indirectly, affected by the relief granted." He mentions as examples of this rule suits for specific performance, the enforcement of express and implied trusts, relief on the ground of fraud, final accounting, settlement of partnerships, and the like.

The same principle is recognized by this court in *Dobson* v. *Pearce* (12 N. Y. 156) and *Stevens* v. *C. N. Bank* (144 N. Y. 50). In the former case the plaintiff in a judgment recov-

ered in this state, brought an action upon it in the state of Connecticut, and the defendant in the judgment filed a bill in equity against the plaintiff in the courts of that state, alleging that the judgment was procured by fraud and praying relief against it. The plaintiff in the judgment appeared and litigated the equity suit, and upon the trial the court decided that the judgment was obtained by fraud and enjoined the plaintiff from prosecuting the action upon it. The original judgment was subsequently assigned, and the assignee brought suit thereon in this state, where it was held that the judgment of the Connecticut court was conclusive evidence that the original judgment rendered in this state was obtained by fraud. The decision in that case is, therefore, a direct authority to the effect that a court of one state may, where it has jurisdiction of the parties, determine the question whether a judgment between them, rendered in another state, was obtained by fraud, and, if so, may enjoin the enforcement of it.

The decision in the *Stevens* case is to the effect that courts of this state have power to set aside a judgment or decree obtained by fraud, although it was obtained in the United States court. In that case, an action brought in the Supreme Court of this state, was removed into the United States Circuit Court, and the question of the validity of the judgment of the United States court arose in an action subsequently brought in the state court. Upon an appeal to this court from a judgment of the latter, it was held that, while the state courts have no authority to stay proceedings in actions in Federal courts, yet when the parties to such an action are residents of the state, a court of equity may act *in personam* upon such parties, and direct them to proceed no further in the suit. In delivering the opinion in that case, Judge Bartlett quoted, with the approval of the court, the rule laid down by Judge Story, which is as follows: "Although the courts of one country have no authority to stay proceedings in the courts of another, they have undoubted authority to control all persons and things within their own territorial limits. When, therefore, both parties to a suit in a foreign country are residents within the

territorial limits of another country, the courts of equity in the latter country may act *in personam* upon those parties and direct them by injunction to proceed no further in such suit. In such a case these courts act upon an acknowledged principle of public law in regard to jurisdiction. They do not pretend to direct or control the foreign court, but without regard to the situation of the subject-matter of the dispute, they consider the equities between the parties and decree *in personam* according to those equities and enforce obedience to their decrees by process *in personam.*" The learned judge who delivered the opinion in that case then adds: "This is the acknowledged rule in England and in this country," and cites numerous cases which sustain that doctrine.

The authorities already referred to are adverse to the contention of the respondents, and seem to be decisive of the questions under consideration. We are of the opinion that the court had jurisdiction and authority to award a judgment against the defendants *in personam* restraining them from receiving and dissipating the funds belonging to the estate of Andrew J. Davis, and that the complaint states facts sufficient to constitute a cause of action. It follows that the questions certified to this court should be answered in the affirmative, that the judgment of the Appellate Division should be reversed and that of the Special Term affirmed, with costs, with leave, however, to the respondents to withdraw their demurrer and answer the complaint within twenty days after notice of the judgment, upon the payment of the costs of the demurrer and costs of the appeals herein.

BARTLETT, J. (dissenting). The salient points brought out by the perusal of the complaint are that only the plaintiff and two heirs at law out of twenty or more reside in the state of New York; that there is before the court on this demurrer but one heir at law; that the court has jurisdiction neither of the entire subject-matter nor all of the parties; that the plaintiff asks no relief except a perpetual injunction; that no rights are sought to be adjudicated in this suit. In answering the ques-

tions certified as to jurisdiction, and as to whether the complaint-states a cause of action, I do not pass on the sufficiency of the complaint, assuming plaintiff was in a court having power to deal with all the questions involved, as it is only necessary at this time to determine whether, under the admissions of the demurrer, there are facts established showing a cause of action of which the court below might have entertained jurisdiction.

In view of the location of the subject-matter, the residence of the parties and the pending litigation in Montana, I am of opinion that the court below properly declined jurisdiction. It is true the complaint avers property in Montana, New York and elsewhere, but against this vague and indefinite allegation which would be true as to this state if there was a bank balance of fifty dollars here, we have the fact that the Montana Probate Court has assumed jurisdiction and made a decree of distribution.

Jurisdiction is not claimed in the briefs by reason of subject-matter located here, but is rested upon the power of the court to enforce its judgment *in personam* as against the Montana decree.

All that the plaintiff seeks in this jurisdiction is a permanent injunction acting upon two heirs at law residing in this state and such others as he may be able to serve, enjoining them from receiving shares under the Montana decree.

The heirs residing elsewhere are at liberty to receive their interests under the decree, and the executors can proceed with the due administration of the estate so far as we are advised by this record.

It is manifest that the plaintiff can only secure adequate relief in a court of equity having jurisdiction of the subject-matter and parties or having jurisdiction of all the parties with full power to enforce its decree *in personam*.

The learned counsel for the plaintiff states that he does not complain of admitting the will to probate, but of the alleged fraudulent agreement and the decree of distribution based thereon.

Nevertheless he fails to ask for an adjudication of plaintiff's rights under the original agreement and of the effect of the alleged fraudulent agreement and the judgment of distribution carrying it out; he demands no decree that shall adjudge the rights of all the parties and enable the legal representatives to wind up and distribute the estate.

This is not an oversight, but is consistent with the theory of the case as argued by appellant's counsel. He says in his final brief : " The decision of this court will be binding only upon those over whom we have obtained our jurisdiction here, but it will be a precedent in the other suits of a similar nature that we have brought in other states for the same purpose." No general adjudication is contemplated, and the course pursued may lead to opposing decrees in different states, and this fact is of itself a good ground for declining to entertain jurisdiction. (*Harris* v. *Pullman*, 84 Ill. 27.)

In this connection the familiar rule is invoked that a court of equity may render a decree in regard to property, real or personal, in another state and in effect stay the execution of a foreign judgment or a judgment recovered in a Federal court.

The foundation of this jurisdiction is the presence of the parties in interest before the court and the opportunity thus afforded to enforce the decree *in personam*.

Mr. Pomeroy points out this rule with much clearness (Pomeroy's Equity, vol. III, § 1318) as follows, viz. :

" Where the subject-matter is situate in another state or country, but the parties are within the jurisdiction of the court, any suit may be maintained and remedy granted which directly affect and operate upon the person of the defendant and not upon the subject-matter, although the subject-matter is referred to in the decree, and the defendant is ordered to do or to refrain from certain acts toward it, and it is thus ultimately but indirectly affected by the relief granted." The learned author, as illustrating this principle, refers to suits to compel the specific performance of a contract to convey land situate in another state; to enforce express or implied trusts;

to secure relief on the ground of fraud and to obtain a partnership accounting.

The counsel for the plaintiff refers us to the recent case in this court of *Stevens* v. *Central National Bank* (144 N. Y. 50) as sustaining this action.

It is true that in the case cited the appellants were enjoined from proceeding with a sale of premises under a decree of the Circuit Court of the United States, but this relief was granted in an omnibus suit, bringing in all parties in interest, and praying to set aside as fraudulent a prior judgment between some of the parties in the Supreme Court of the state of New York, and upon which the decree in the Federal court was founded.

The case cited is an apt illustration of the power of a court of equity, having all the parties before it, to enforce its decree *in personam*, without attacking the jurisdiction of the United States Circuit Court or questioning the validity of its decree. The court also had jurisdiction of the subject-matter.

The courts in England have gone so far as to hold that it rests in the discretion of the court, having jurisdiction of the parties, to determine whether it will restrain the litigation in a foreign court or refuse the injunction and allow it to proceed.

The question in such a case is how the matter in controversy can be most expeditiously adjusted and the ends of justice obtained. (*Bunbury* v. *Bunbury,* 1 Beav. 318; *Beckford* v. *Kemble,* 1 Simons and Stuart, 7; *Wedderburn* v. *Wedderburn,* 2 Beav. 208.) In *Jones* v. *Geddes* (1 Phillips, 724) an injunction granted on a suggestion of fraud to restrain a party resident in England from prosecuting a suit in the Court of Session in Scotland, to enforce a legal security against lands situate in that country, was, on appeal, dissolved, on the ground that, although the remedy afforded by the High Court of Chancery in cases of fraud was more effectual and complete than in the Scotch court, the question between the parties might, upon the whole, be more conveniently litigated and

with a more conclusive result in Scotland than in England. (See, also, 1 High on Injunctions, §§ 106, 107.)

In the case at bar, if the court below had acquired jurisdiction of all the parties, it might even then have been a question addressed to its sound discretion whether it would have retained the cause or required the parties to proceed in the state where a court of competent jurisdiction had entered upon the administration of the estate in controversy. It would have presented the question of the due and orderly administration of justice under the comity of States.

How much stronger is the argument in view of the fact that the court below had not acquired jurisdiction of all the parties and is in no condition to proceed with the trial of the cause.

This is peculiarly a case where the local tribunals should assume jurisdiction; the estate of the deceased is in due course of administration in the Montana Probate Court, and all of the parties in interest hostile to plaintiff have appeared in that proceeding; the decree recites that the estate, in respect of which the probate is applied for, "does not exceed the value of three million dollars," thus disclosing a large amount of property within the jurisdiction.

If it proves to be the fact that the Probate Court has exceeded its jurisdiction in making the decree of distribution on the stipulation of parties, then it is essential that the aid of a local court of equity should be invoked having power to enjoin the execution of the decree and to finally determine the rights of all concerned in the estate as legatees, heirs at law and next of kin, or as assignees, legal or equitable. The fact that the estate would be thus tied up in Montana, where so many of the interested parties have already appeared, renders it very probable that all concerned in the final distribution will be compelled to submit to the jurisdiction if a suit in equity is brought where the subject-matter is located.

It would seem that, in so far as the power to bring about this result rests in the discretion of the court below in assuming or declining jurisdiction, that it should relegate the

parties to the forum best calculated to do full justice to all concerned.

The precise result which the plaintiff seeks to secure in his present selection of remedies is not clear.

There is no allegation that any of the estate has been paid out under the Montana decree; it is not claimed that the demurring defendant is possessed of any portion of the estate. This is not an action to enforce a lien against the fund in the hands of the distributees.

As before pointed out, the plaintiff's object is to secure a perpetual injunction in every state where an heir at law can be found, enjoining him from receiving his share under the Montana decree. Assuming plaintiff is successful in obtaining such an injunction against every heir at law outside of the state of Montana, how much nearer is he to a final determination of this controversy?

Does not the obvious fact remain that resort must be had to a court of equity having full jurisdiction to determine the validity and effect of the original contracts, the fraud as alleged, the rights of all the parties, and to enter a decree of distribution that will protect the executor in winding up the estate?

It seems to me clear that even if it be assumed that the court below was vested with the partial and fragmentary jurisdiction invoked by plaintiff, it would have been contrary to the weight of authority and opposed to the best interests of all the parties to have exercised it.

It is not necessary for the purposes of this case to define the exact limits of the jurisdiction of a court of equity in this state, under the facts alleged, as I prefer to rest this dissent upon the power of the court in the exercise of a sound discretion to decline jurisdiction.

The point is made that under the questions certified for our determination the judgment must be reversed, for the reason that the question as to jurisdiction does not call upon us to consider whether the Supreme Court had the discretion to

24

refuse to entertain the action under the circumstances. It appears to me that this court cannot under any fair or reasonable interpretation of the provisions of the Code be confined to a strictly categorical answer.

We are called upon to decide whether upon the face of the complaint the court below had jurisdiction of the action, and the interrogatory opens up this question in all its phases.

I am of opinion that the complaint does state a cause of action and that the court below had a limited jurisdiction in a technical sense, but within its discretionary power it could decline to exercise it. This being the legal situation, we cannot assume under the record as it stands that the Supreme Court did not dispose of the case by the exercise of its discretion.

The interlocutory judgment appealed from should be affirmed.

Andrews, Ch. J., O'Brien and Vann, JJ., concur with Martin, J., for reversal; Gray and Haight, JJ., concur with Bartlett, J., for affirmance.

Judgment reversed, etc., in accordance with prevailing opinion.