Edmund J. Lowry, Respondent, v. The Farmers' Loan and Trust Company et al., Appellants, Impleaded with Others.

1. Corporations — Stock Dividends Declared Out of Profits Represent Income Not Capital.   Where a corporation has declared a dividend upon its capital stock payable in new stock certificates, if it is based upon an accumulation of earnings or profits, by their distribution in that manner the stockholders receive the representative of income and not of capital.

2. Trusts — When Life Beneficiary Is Entitled to Stock Dividends as Income.   Where the will of a testator creates a trust during the life of a beneficiary with remainder to his heirs and directs that the entire income of the securities of the trust fund is to be applied as income and that no part of such income shall be diverted to the formation of a sinking fund to replace any loss of the principal by depreciation in value of the securities, such provisions, with others indicating a comprehensiveness of intention with respect to the enjoyment by the beneficiary of the income in connection with the source of the dividend itself, entitle the life tenant and not the remainderman to a stock dividend declared out of "an accumulated net surplus" upon the stock of a corporation in which a portion of the trust estate was invested.

*Lowry* v. *Farmers' Loan & Trust Co.*, 56 App. Div. 408, affirmed

(Argued June 19, 1902; decided October 7, 1902.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 8, 1901, upon an order reversing a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term and directing judgment for the plaintiff.

The action involves the construction of the provisions of the will of John Lowry, who died in 1895.   In the seventh clause, the will set apart one fourth of the residuary estate, to be held by the Farmers' Loan and Trust Company, in trust to apply the rents, issues and profits thereof to the use of the testator's widow, until her death, or remarriage; in either of which events the trust property should go "to increase the portion of the estate held in trust for the benefit of my children as hereinafter stated."   By the second subdivision of the same clause, the residuary estate was to be divided by the executor, the defendant trust company, into shares for the testator's children and one of said shares was given to it "in

trust, to receive the rents, issues and profits thereof, and to apply the same to the use of each one of my children who may survive me, during the natural life of such child, and, after the death of each child, to pay over the principal of such trust fund to the right heirs of such deceased child." The eleventh clause of the will provided that " The trustee under my will and its successor, in addition to the ordinary powers of trustees in such cases, shall have full power to retain the trust fund in any securities in which the same may be invested at the time of my death," and that " When any investment of trust funds has been made by purchase of securities, such securities shall form part of the principal of the trust fund and follow the trust; and the entire income from such securities shall be applied as income, irrespective of the price paid for the securities or the subsequent value thereof; it being my will that no part of such income shall be diverted to form a sinking fund to replace any loss to the principal by depreciation in value of the securities." The plaintiff is one of the surviving children of the testator and brought this action to compel the trustee to account for, and to pay over to him, an extra dividend of fifty per cent, which had been declared upon the capital stock of the Pullman Palace Car Company, payable in certificates of stock at par value. The testator's estate comprehended fifty shares of the stock; eight of which formed part of the trust estate held for plaintiff. The dividend had been declared and paid from the " accumulated net surplus at the credit of income account;" as the same appeared in the accounts of the company. This accumulation of surplus had existed at approximately the same figure for a time prior to testator's death. At the Special Term, the complaint was dismissed; upon the ground that the stock dividend should be treated as principal and, therefore, should be held for the remaindermen. The Appellate Division of the first department, holding that the stock dividend should be treated as income, reversed that judgment and ordered a judgment for the plaintiff. The trust company thereupon appealed to this court.

*David McClure* for The Farmers' Loan and Trust Company, appellant. The testator, at the time of his death, as a shareholder of the car company, had a fixed right in reference to all the assets of the corporation in the ratio which the number of shares held by him sustained toward the entire capital stock of the corporation. (*Jermain* v. *L. S. & M. S. R. Co.,* 91 N. Y. 483; *Burrall* v. *B. R. R. Co.,* 75 N. Y. 211; *Kent* v. *Q. M. Co.,* 78 N. Y. 159; *People ex rel.* v. *Coleman,* 126 N. Y. 433; *Plimpton* v. *Bigelow,* 93 N. Y. 502.) The laws of this state recognize the fact that the interest of a decedent in the surplus earnings of a corporation at the time of his death is capital and not income. (*Matter of Bronson,* 150 N. Y. 1; *Matter of Fitch,* 160 N. Y. 87.) A stock dividend neither increases nor diminishes the assets of the corporation, but only indicates a transformation in the manner in which the property of the corporation is held. (*Williams* v. *W. U. T. Co.,* 93 N. Y. 162; *Rogers Case,* 22 App. Div. 428.) The stock dividend in the present case should be declared to be principal and not income. (*Matter of Rogers,* 161 N. Y. 108.)

*Alfred Roelker, Jr.,* for Muriel Valentine, appellant.

*Clinton E. Bell* and *Eugene H. Lewis* for respondent. A corporation is a distinct and separate entity apart from its shareholders, who have merely choses in action against the separate entity. (*Burden* v. *Burden,* 159 N. Y. 287; *Jermain* v. *L. S. & M. S. R. Co.,* 91 N. Y. 483; *Plimpton* v. *Bigelow,* 93 N. Y. 592; *Vail* v. *Hamilton,* 85 N. Y. 453; *Matter of Bronson,* 150 N. Y. 17; *Matter of Whiting,* 150 N. Y. 27; *Matter of Morgan,* 150 N. Y. 235.) A stockholder in the absence of bad faith has no legal or equitable title to surplus profits of a going concern until the declaration of a dividend. (*Greff* v. *E. L. Assur. Society,* 160 N. Y. 19; *Hyatt* v. *Allen,* 56 N. Y. 553; *Goldsmith* v. *Swift,* 25 Hun, 201; *Button* v. *Hoffman,* 61 Wis. 20; *Burden* v. *Burden,* 159 N. Y. 287.) The testator's intention should be construed in accordance with the foregoing established principles

of corporation law, taking into consideration the express language of the will, the scope and purpose of the will as a whole, together with all the surrounding circumstances, and considering especially the relationship of the testator to the plaintiff. (*Du Bois* v. *Ray*, 35 N. Y. 162 ; *Matter of Hoyt*, 160 N. Y. 607 ; *Hyatt* v. *Allen*, 56 N. Y. 553 ; *Steinway* v. *Steinway*, 163 N. Y. 197 ; *Clarkson* v. *Clarkson*, 18 Barb. 646 ; *Matter of Gerry*, 103 N. Y. 451 ; *Matter of N. Y. L. Ins. & T. Co.*, 53 N. Y. Supp. 382.) Where a testator leaves as part of his estate shares of stock, the income of which he desires to be paid to his children, and the corporation in which the testator held such stock continues its corporate existence and declares an extra dividend out of accumulated earnings, whether such dividend be in cash or stock, such dividend shall be paid to the life tenant, without reference to the time when it may have been earned by the corporation. (*Riggs* v. *Cragg*, 89 N. Y. 479 ; *Clarkson* v. *Clarkson*, 18 Barb. 646 ; *Matter of Woodruff*, 1 Tuck. 58 ; *Goldsmith* v. *Swift*, 25 Hun, 201 ; *Matter of Kernochan*, 104 N. Y. 618 ; *Matter of Warren*, 33 N. Y. S. R. 584 ; *Matter of Prime*, N. Y. L. J. March 6, 1891 ; *McLouth* v. *Hunt*, 154 N. Y. 179 ; *Matter of Hoyt*, 160 N. Y. 615.) The distinction made by the court below between a stock dividend and a cash dividend is a distinction without a difference for the purposes of this case. (*Riggs* v. *Cragg*, 26 Hun, 89 ; 89 N. Y. 479.) Any apportionment of the earnings of a going concern is contrary to the established law of this state. (*Riggs* v. *Cragg*, 26 Hun, 89 ; *Simpson* v. *Moore*, 30 Barb. 637 ; *Goldsmith* v. *Swift*, 25 Hun, 201 ; *Matter of Rogers*, 22 App. Div. 428 ; 161 N. Y. 108.) To decide that the stock dividend is principal of the estate is to imply an illegal and void intention on the part of the testator. (*Manning* v. *Q. S. M. Co.*, 24 Hun, 360 ; *Hascall* v. *King*, 162 N. Y. 134 ; *Pray* v. *Hegeman*, 92 N. Y. 508 ; *Matter of Rogers*, 22 App. Div. 428.) The court will not imply a void and illegal intention, but, where two interpretations are possible, the court will choose the one making the will valid. (*Hopkins* v. *Kent*, 145

N. Y. 367; *Tilden* v. *Green*, 130 N. Y. 66; *Arthur* v. *Arthur*, 3 App. Div. 378.)

GRAY, J.   The object of this action was to have it determined that, as between the plaintiff, the beneficiary of a trust created by the testator's will, and those entitled in remainder to the trust fund, the shares of stock received by the trustee, in payment of a dividend of fifty per cent, which had been declared by the Pullman Palace Car Company upon its capital stock, were to be regarded, and treated, as income of the trust estate.   The question whether the life tenant of property, or the remainderman, should have the dividend, which a corporation has declared and has made payable in certificates of its stock, has been a vexed one.   The decisions of the courts in this country and in England have not been harmonious and in this state, it may be said, it had received no authoritative treatment by this court, until the decision of the recent case of *McLouth* v. *Hunt*, (154 N. Y. 179).   Several decisions of the Supreme Court of this state had, previously, given support to the doctrine that where a life tenant is given the income and profits, and specifically, in some cases, dividends, all dividends, whether payable in cash, or in certificates, belonged to him.   (*Clarkson* v. *Clarkson*, 18 Barb. 646; *Simpson* v. *Moore*, 30 ib. 637; *Riggs* v. *Cragg*, 26 Hun, 89.)   When the case of *Riggs* v. *Cragg* came to this court, (89 N. Y. 479), this question, though passed upon below, was not decided; the appeal being determined upon other grounds.   It was there observed in the opinion, that the question had not been considered by this court and that, in view of the conflict in the decisions elsewhere, it would be its duty, when the occasion arose, to settle the question upon principle.   That occasion did arise, when the appeal in *McLouth* v. *Hunt*, (*supra*), came before this court.   In *McLouth* v. *Hunt*, the direction was to pay over to the beneficiary " the full income " and the question presented was, whether a stock dividend, declared by the Western Union Telegraph Company, some four years after the testator's death, should be treated as income, pay-

able to the life tenants, or as accession to the capital of the trust fund. The company, as the facts are stated, in 1892, " by a capitalization of accumulated earnings made and retained in its hands, from time to time, increased its capital stock from $86,200,000 to $100,000,000 and, predicated thereon, made a stock dividend of ten per cent to its stockholders ; " the resolution reciting that the earnings of the corporation had been withheld from the stockholders for almost ten years ; that they had accumulated, and that they were distributed in the form of stock certificates instead of money. It was pointed out in the opinion that the substance and intent of the corporate action were to distribute earnings and that there was no addition made to the capital ; for, notwithstanding that there resulted an increase of capital stock, the corporation had neither more property, nor more capital. It was held that the transaction, although in the form of an issue of stock certificates, was a distribution of the profits and that what the stockholders got " represented income and was income." The opinion discussed the question with some fullness, as an undetermined one in this court, and a further review of the cases is unnecessary now. Aside from cases which are substantially parallel in their facts and, therefore, within the precedent, under the authority of *McLouth* v. *Hunt*, courts will determine for themselves, " according to the nature and substance of the thing which the corporation has assumed to transfer," whether a dividend, when declared, represents income, or not. That case was a stronger one, in some aspects, than the present one for the remainderman. The rule, as settled by that case, is that where a corporation has declared a dividend upon its capital stock, payable in new stock certificates, if it is based upon an accumulation of earnings, or profits, by their distribution in that manner, the stockholders receive the representative of income and not of capital. I do not think that it is possible to distinguish that case, as an authority upon the question before us. It may be true, as the appellant contends, that *McLouth* v. *Hunt* declared no hard and fast rule, that stock dividends are always to be treated as

income, and that each case must be decided upon its own facts; but the general rule, which it enunciated, seems to apply very exactly to the conditions of the present case.

In approaching the consideration of such a question, the language in which the gift is made to the beneficiary of a trust, or the life tenant of the estate, must be regarded, in order to determine, preliminarily, the comprehensiveness of the testator's intention, with respect to the enjoyment by the object of his bounty of the yield of the intermediate estate. Then the transaction, through which the property of the corporation is being distributed in the extraordinary form of a stock dividend, is to be looked into; in order that its true nature may appear and that a determination may be reached, whether capital, or an accumulation of profits on the capital, is being divided among the stockholders. While the corporate action may not be, necessarily, conclusive upon the court, with respect to the question, if it is based upon facts, and is not purely arbitrary, it will, and should, be controlling. In the first place, then, we have, in this will, a provision made by a parent for his child; which gives to the latter the " rents, issues and profits " of his equal share of the residuary estate, during his life. Upon the remarriage, or the death, of the testator's widow, that share is to be proportionately increased by the distribution of the one-fourth share, which had been held in trust for the widow. Further, the testator directed that the entire income of the securities of the trust fund was to be applied and that no part should be diverted to the formation of a sinking fund to replace any loss of the principal by depreciation in value of the securities. These provisions, certainly, evidence a comprehensive intention of the testator that whatever was in the nature of profits upon, or income of, the trust fund should be fully enjoyed by the beneficiary. In the next place, we have the trustee receiving from the Pullman Company, upon the shares of its stock held in trust, a dividend of fifty per cent, paid out of " accumulated net surplus at the credit of income account," in certificates of new stock of the corporation. The fact of the source of the divi-

dend appeared from the company's statement; which showed an accumulation of net surplus from year to year, for thirty-one years. A cash dividend of twenty per cent had been declared a short while previously; which the trustee had paid over to the plaintiff. Had this dividend of fifty per cent been declared and paid in cash, would there have been much doubt about the plaintiff's right to receive it? (*Matter of Kernochan*, 104 N. Y. 618, 629.) What reasonable, or substantial, distinction is there, in principle of ownership, between a dividend which is paid in stock and one which is paid in money, when either is based upon a division of earnings? Mr. Morawetz, in his work on Corporations, (§ 468), has observed, with respect to such stock dividends, that, "in substance and effect, it amounts to a distribution of profits among the shareholders in cash and a subsequent purchase of new shares in the company with the sums distributed." It is true enough, as the appellant argues, that the testator, at the time of his death, owned the right to share in the assets of the corporation, proportionately to the amount of stock which he held; but it does not, therefore, follow that dividends, thereafter made from the accumulations of earnings, must be regarded and treated as additions to the capital of the trust estate. All stockholders are interested in the operation of the property of a corporation and their shares of stock represent individual interests in the corporate enterprise, in its capital, as in its net earnings; but the corporation itself has the legal title to all the properties and holds them for their benefit. They have a right to dividends, only as the corporate agents, in the exercise of their discretion, may declare them, (in the absence, of course, of any question of bad faith, neglect, or abuse of discretion), and they have the right to a *pro rata* distribution of the corporate assets upon dissolution. (*Jermain* v. *L. S. & M. S. R. Co.*, 91 N. Y. 483; *Plimpton* v. *Bigelow*, 93 ib. 592; *Matter of Bronson*, 150 ib. 1; *Greeff* v. *Equitable L. Assur. Socy.*, 160 ib. 19.)

The declaration of a dividend by a corporation in active operation is the appropriation of a portion of the assets, which

represented the net earnings of the corporation, for the use of the stockholders and, *pro tanto*, the assets are diminished. The stock no longer represents them. The capital is unchanged; but the value in the market of the shares may be affected by the diminution in the amount of the corporate assets. That the value of the shares of stock has been lessened by a dividend is a fact of no relevancy in determining the question of whether the dividend is to be regarded as income to the life tenant, or as capital for the remainderman. That question will be determined by the origin of the dividend. In this case, a fund had been created by an accumulation of the net earnings of the corporation and it remained a part of the general assets, until, in the judgment of the directors, the time came when it was proper and prudent to distribute it among the stockholders. That which the directors of the corporation distribute among its stockholders, without intrenching upon capital, must be comprehended within the term " profits " and we should assume that the testator intended that what might be paid in that way should belong to the beneficiary.

There is no question of diminishing the capital; nor of increasing the capital for any corporate purpose, or need. It was, simply, a mode of distributing the profits earned by the employment of the capital.

Enough has been said, in connection with the authority of *McLouth* v. *Hunt*, to render the conclusion necessary that the judgment of the Appellate Division should be affirmed; with costs to the plaintiff and to the defendant trustee, to be paid out of the principal of the fund.

PARKER, Ch. J., O'BRIEN, BARTLETT, MARTIN, VANN and CULLEN, JJ., concur.

Judgment accordingly.