Under the rule stated in these cases, the eighth paragraph must be disregarded. Grammatically, it contains nothing of a dispositive character, since it only affects to dispose of a residue in case there is none. If it were sought to import into this paragraph a meaning which its terms refuse to yield, any effort to make use of such constructive meaning to cut down the clear and precise gift of the residue contained in the seventh paragraph would be forbidden by the cases cited.

· So far as personal property was inadequate for the payment of the legacies, the testator charged the same upon his real estate, and the decree should provide that the rentals which the executor has received under the power given to him by the will be applied to the payment of the legacies.

Decreed accordingly.

---

·(63 Misc. Rep. 489.)

### In re CAREY et al. ·

(Surrogate's Court, Suffolk County. May, 1909.)

TRUSTS (§ 272*)—CAPITAL OR INCOME—CORPORATE STOCK.

Testator directed his trustees to pay annually from the income of his estate a designated amount to a person named and the balance to another person. Testator at his death had stock in a certain corporation which thereafter declared an extra cash dividend out of its accumulated surplus, and, under a plan to increase its capital stock, gave its stockholders a right to take at par, for cash, new stock equal to 40 per cent. of the stock held, and it was stipulated that each stockholder signing the agreement covenanted to take that amount of the new stock, and that upon payment of the extra cash dividend it should be applied in payment of such subscription. *Held,* that the shares of stock so received by the trustees did not become a part of the capital of the trust fund, but were income belonging to the legatee of the balance thereof after payment of the annuity.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 385; Dec. Dig. § 272.*]

Proceedings upon the judicial accounting of Henry T. Carey and others, as trustees under the will of George Winthrop Thorne, deceased. Account settled.

Gilbert M. Speir, for trustees.
Evarts, Choate & Sherman, for Helene, Lady Leigh.

BELFORD, S. Under the will of the deceased, certain property is devised and bequeathed to the above-named trustees, and the income is to be disposed of as follows:

"To pay to Marie Valadier of the city of Paris, in France, the sum of ten thousand dollars ($10,000) in each and every year for and during the term of her natural life in equal quarter yearly payments, commencing from the date of my death, such payments to be made to the said Marie Valadier upon her own individual receipt without power on her part of assigning, anticipating or otherwise alienating such annuity, and upon the further trust to pay over the balance of the income of my said residuary estate to Helene Leigh, wife of the Honorable Dudley Leigh, to her own use absolutely."

The testator had at his death, on February 1, 1904, ·100 shares of the common stock of the Niles-Bement-Pond Company of the par

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

value of $100 each. These shares of stock were received by the trustees and have ever since been held by them as a part of the capital of the trust estate. On or about October 1, 1906, the Niles-Bement-Pond Company issued a statement to the common-stock holders of the company, which statement embodied a plan to increase the capital stock of the said company by an amount of $3,500,000, and the terms under which the then holders of the common stock could participate in this increase. This statement contains the following:

"(2) That a dividend, to be known as an extra dividend, and to amount to forty ($40) dollars in cash upon each share of the common stock now outstanding, shall, upon declaration thereof by the board of directors, be paid and distributed, from and out of the accumulated surplus of the company, to and among the holders thereof. (3) That holders of the outstanding common stock shall have the right to subscribe, take and pay for, at par, for cash, an amount of the new and increased common stock equal to forty (40) per cent. of the outstanding common stock held by them respectively, as stated opposite their signatures hereto. Every stockholder signing this agreement covenants and agrees, but only on payment of said extra cash dividend of forty ($40) dollars per share, to so subscribe and pay for the above-mentioned amount of said new common stock; and that, upon payment of the extra cash dividend above referred to, the money so paid shall be applied in payment of such subscription."

Under this agreement a check for $4,000, being 40 per cent. on the 100 shares of the stock of this corporation held by the trustees above named, was received by the attorneys named in their proxy, who indorsed and delivered it to the corporation, and on or about January 2, 1907, the trustees received a certificate for 40 shares of new common stock of said company of the par value of $100 each; and the question presented to the court for determination at this time is whether this is properly added to the trust estate as a part of the capital of the trust, or whether it is income and, as such, should be paid to Lady Leigh as a part of the surplus of income over and above the $10,000 provided for the annuitant, Marie Valadier.

The attorneys for the respective parties herein have presented very able and exhaustive briefs upon the question presented. As to whether or not the 40 shares of stock so received by the trustees shall be considered principal or income is dependent upon two considerations, in the main: First, what provision, if any, the testator has made for any such contingency as this? What, if anything, he has said with reference to any extra dividends upon any portion of his estate? And, secondly, what is the origin of the dividend itself? Whence does it come? How was it regarded by those who issued it?

As to the first of these questions, it must be remarked that a careful reading of the will of Mr. Thorne fails to reveal any expressed provision that might apply to anything in the nature of extra dividends upon any portion of his estate. This will simply directs that the trustees shall pay an annuity of $10,000 to Marie Valadier, and that the entire surplus, whatever it may be shall be immediately paid to Lady Leigh. That these 40 shares were considered by the corporation itself to be an extra dividend, I feel constrained to hold, unless the language of paragraphs 2 and 3 of the statement issued by the company is to be taken as meaning exactly the opposite of what they say. Of course, I am

aware of the rule that this court must determine for itself from all the attending circumstances whether or not the 40 shares is in the nature of an extra dividend, and that the mere dictum of the corporation itself would not of necessity be conclusive upon this court; but, where the language is so plain and so free from ambiguity as it is in this case, and where the manifest purpose of the dividend was simply to furnish the holders of the common stock, at least to the extent of $2,000,000, with a fund with which they could pay for the extra issue, it seems to me that the question, under all the decisions in this state, admits of but one solution.

In the case of Lowry v. Farmers' Loan & Trust Company, 172 N. Y. 137, 64 N. E. 796, the court lays down the rule:

"The transaction, through which the property of the corporation is being distributed in the extraordinary form of a stock dividend, is to be looked into, in order that its true nature may appear, and that a determination may be reached, whether capital, or an accumulation of profits on the capital, is being divided among the stockholders. While the corporate action may not be, necessarily, conclusive upon the court, with reference to the question, if it is based upon facts, and is not purely arbitrary, it will, and should, be controlling."

Now, was the action of this company arbitrary in declaring this dividend? It would hardly seem so from the statement which they issued. It had a surplus; it had a very large surplus. It stated that it believed that the common-stock holders were equitably entitled to a portion of this surplus, and it actually paid it in cash.

To my mind this leaves little, if any, question as to the character of the fund in question. It is contended by the trustees that there has been no distribution and no change in substance, but only a change in form, resulting in a capitalization of surplus and a dilution of the common stock of the company, so that the 140 shares which the trustees held after the issue of the new stock was of no extra value and represented the same proportionate interest in the property of the company as the 100 shares held by the company prior to such increase; but I am not impressed by this reasoning. To me it seems quite immaterial that there may have resulted this increase in the stock by a capitalization of the income or the profits. The capital test is: Has there been a distribution of income and profits, or has there been a division of capital? Of course, the latter would not be permitted, and, if the distribution in this case was not made from the income and profits of the business, then I am at a loss how to characterize the transaction. It is true that this dividend was manifestly paid from that portion of the surplus income which had been reserved as working capital; but, no matter how it was designated on the books of the company, it represented actual profits and income from the business of this corporation, and it was from this fund that this dividend was paid, and the mere fact that the common-stock holders used the dividend so received, under an agreement with this company, in the purchase of new stock in the company, did not destroy its character as an actual bona fide dividend, payable from the profits and income of the business.

I therefore decide that the 40 shares of stock received by the trustees from the Niles-Bement-Pond Company are not a part of the capi-

tal of the trust fund, and that they were profits in excess of the $10,-000 annuity payable to Marie Valadier, and that they belong to Lady Leigh.

Decreed accordingly.