### THAYER v. BURR et al.

(Supreme Court, Appellate Division, First Department. December 3, 1909.)

1. WILLS (§ 684*)—TRUSTS—"DIVIDENDS."

　　A will bequeathed certain stock to the executor in trust to apply the dividends to testator's sister so long as she should live, and at her death to transfer the stock to B., but that if the sister at testatrix's decease, or at any time thereafter, shall have her present income increased to as large an amount as the dividends would increase it, then the stock was to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

go to B. at once. *Held*, that the word "dividends" was sufficiently broad to include all distributions of profits, whether in cash, stock, or bonds, and was not qualified by the provision for termination of the life estate prior to the life tenant's death.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1618; Dec. Dig. § 684.*

For other definitions, see Words and Phrases, vol. 3, pp. 2143–2147.]

2. WILLS (§ 684*)—RIGHTS OF LIFE TENANT—DIVIDENDS—INCOME OR CAPITAL.

Testator bequeathed certain stock to the executor in trust to apply the dividends to C. for life, and at her death to transfer the stock to B. and her heirs and assigns. For some time prior and subsequent to testatrix's death, the corporation had been paying cash dividends equal to $8 a share. In 1898 it distributed among its shareholders $12,000,000 of its bonds, secured by surplus assets at the rate of $100 in bonds for each share of stock. In 1907, during the continued life of C., the company made a further distribution of $24,000,000 derived from earnings, $200 for each share of stock, also in the form of bonds. *Held*, that the trustee's share of the bonds so issued constituted "dividends," within the terms of the trust, and hence passed to the life tenant, and not to the remainderman.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1618; Dec. Dig. § 684.*]

Scott, J., dissenting.

Appeal from Judgment on Report of Referee.

Action by Elizabeth C. Thayer, as trustee under the will of Frances A. C. Headley, deceased, against Irene H. Burr and Mary C. Bartow, individually, and as administratrix of Anna M. Coxe, deceased, impleaded with another. From a judgment for plaintiff on the report of a referee, defendant Mary C. Bartow, individually and as executrix, etc., appeals. Reversed, with directions.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

John H. Post, for appellant.
H. B. Closson, for respondent.

McLAUGHLIN, J. In 1884 Frances A. C. Headley died, leaving a will by which she gave to her executor in trust 58 shares of the stock of the Adams Express Company to hold and apply the dividends received thereon to the use of her sister, Anna M. Coxe, during her life, and upon her death she gave the same absolutely to the respondent Irene H. Burr. In 1898 the Adams Express Company distributed among its shareholders $12,000,000 of its bonds, being at the rate of $100 for each share of stock, and the trustee received his proportionate share, which he in turn delivered to Anna M. Coxe, the beneficiary. In June, 1907, the company determined to make a further distribution of $24,000,000, $200 for each share of stock. The amount going to the trustee of Anna M. Coxe has not as yet actually been delivered to him; but the company stands ready to make such delivery if it be determined that he is entitled to receive the same. Anna M. Coxe died in September, 1907, and the question litigated in this action is whether the bonds of both issues belong to her or her estate, or to the remainderman, Irene H. Burr. The referee decided in favor of the

latter, and from the judgment entered upon his report the legatee and administratrix c. t. a. of Anna M. Coxe appeals.

The determination of the question presented depends, first, upon the construction to be put upon that portion of the will creating the trust for the benefit of Anna M. Coxe, and, second, whether the distributions were dividends upon the stock.

By the terms of the will, the stock was given to the executor in trust "to collect and receive the dividends thereon and to apply said dividends as fast as received to the use of my sister, Anna M. Coxe, from year to year so long as she shall live, and at her death the said stock is to go to Irene Burr, the daughter of my deceased husband's sister Irene, and to her heirs and assigns forever." So far as this clause of the will is concerned, there can be, as it seems to me, no question but that the words "the dividends thereon" are sufficiently broad to comprehend and include all dividends made, whether in cash, stock, or bonds, and if the bonds in question were "dividends," as distinguished from distributions of "capital," then they belonged to Anna M. Coxe. In this respect I do not understand there is a serious dispute between the parties; but it is claimed that the sentence immediately following the provision of the will quoted qualifies and limits the words "the dividends thereon." The sentence referred to is:

"But if my said sister Anna, at my decease, or at any time thereafter, shall have her present income increased to as large an amount as the said dividends would increase it, then the said stock is to go at once to the said Irene Burr."

For some years prior to the death of the testatrix, the Adams Express Company had paid to its shareholders annual dividends of $8 per share, and the referee found that it was the intention of the testatrix that the life tenant should receive from the 58 shares only an income of approximately $464 per annum during her life, or until her income should be increased by that amount from some other source, and that it was not her intention that the life tenant should participate in any extraordinary distribution of the assets of the company such as the bond issues unquestionably were.

The terms of the will are plain and unambiguous, and therefore the intention of the testatrix must be gathered from it. When the whole will is considered, I am unable to construe it in the manner which the referee did, or to determine from it that it was the testatrix's intent that the life tenant should receive from the 58 shares only an income of approximately $464. On the contrary, it seems to me her intent was that the life tenant should receive whatever dividends were declared upon the stock, irrespective of what the amount might be, unless the income which she was receiving at the death of the testatrix were increased from some other source "to as large an amount as the said dividends would increase it." It may well be that the testatrix, in making the provision for Anna M. Coxe, had in mind only the regular annual dividends; but there is nothing in the will to show that she intended to limit in any way the income to be received by her by way of dividends. The testatrix undoubtedly knew the annual dividends were fixed from year to year and the amounts might be changed at any time. If they had been reduced to $4 a share, the life tenant

would assuredly have had no claim upon the remainderman or the estate for anything additional. Likewise, if they were increased, as they were in fact, to $10 a share for some six years prior to the time the last distribution of bonds was made, it is not and could not be claimed they did not wholly belong to her. That the testatrix had in mind the amount of income might vary, and did not intend to limit the dividends payable to the beneficiary to any fixed sum, is shown by the sixth clause in the will, by which, among other things, she authorized the trustees to sell the stock if necessary, and "reinvest the proceeds in some other good and safe securities  *  *  *  in such manner as in his judgment will be most for the advantage of my said legatees." If this had been done, no one could tell what the dividends payable to the life tenant would have been; nor is that subject of importance, because it is conceded—at least the fact is not disputed—that the income of the life tenant never was increased from sources other than dividends derived from the stock. Therefore whatever dividends were declared upon the stock during her life belonged to her.

The only subject which remains to be considered is whether the bonds which were distributed were in fact dividends. If so, they belonged to the life tenant; otherwise to the remainderman. The Adams Express Company is an unincorporated joint-stock association. It was organized in 1854 with 100,000 shares; the number of shares being afterwards increased to 120,000. The shares have no par value, since the company has no fixed capital. Its business is directed by a board of managers, who, under the articles of association, have power to determine from time to time the amount of its capital, surplus, and reserve fund as they see fit. So far as appears the managers have never separated its assets into particular funds; but all the property and assets of the company have been carried indiscriminately in a "profit and loss" account. In 1898 the company owned various securities exceeding in value the sum of $12,000,000, and the managers resolved to "set apart and distribute" among the shareholders, "out of its surplus assets, the sum of $12,000,000." The method of distribution adopted was by an issue of $12,000,000 in bonds of the company, secured by securities exceeding that amount in value which the company transferred to a trustee. The shareholders were not liable individually upon the bonds, and the securities transferred remained primarily liable for the debts of the company after its other assets should be exhausted and for the indemnification of any individual shareholder who should be compelled to pay, individually, any debt of the company. The bonds were payable in 1948, the year in which the company is to terminate. The trust deed transferring the securities recited that:

"The managers of the company have resolved to issue to the shareholders bonds of the company to the amount of one hundred dollars par value for each share of the company, as the distributive share or dividend of such shareholders and representing their respective interests in certain surplus assets of the company."

The issue of bonds in 1907 was upon quite similar conditions, except that they were payable in 1947, and no provision was made for the indemnification of shareholders from the securities transferred. The resolution of the managers in 1907 was "that the capital and re-

served fund of the association be reduced by transferring and assigning bonds and stocks belonging to the association of the value of $24,000,-000, to a trustee to hold for the pro rata use and benefit of the shareholders, * * *" and the trust deed contained a recital accordingly.

It is not claimed, so far as I have been able to discover, that the securities transferred in each case had not been purchased with the earnings of the company or the income from accumulated earnings profitably invested. If this be true, then I think, regardless of any terms used by the managers, the bonds represented income, and not capital. If the managers had allowed the earnings, in excess of their regularly declared dividends, to accumulate, and then made a distribution among the shareholders in cash, either in the form of increased annual dividends or by an extra or extraordinary one, I do not believe it could be seriously questioned but that such distribution would be regarded as dividends on the stock, and as such would belong to the life tenant. That is substantially what was done. The fact that the distribution was made in bonds, instead of cash, cannot change the situation. The form of the distribution is immaterial so long as there is a distribution of profits.

In McLouth v. Hunt, 154 N. Y. 179, 48 N. E. 548, 39 L. R. A. 230, a stock corporation, from its accumulated earnings, increased its capital stock and issued to its stockholders a dividend of 10 per cent. based thereon. The court held, refusing to follow the rule established in Massachusetts and England, that the additional stock so issued belonged to the life tenant, and not to the remainderman. Judge O'Brien, who delivered the opinion of the court, said:

"When the substance of the transaction is analyzed, it will be seen that what the corporation really did was to issue to the shareholders its own obligations in the form of stock certificates against the accumulated earnings which it had on hand, and these certificates, having a market value, could readily be converted into money by the shareholders. So that the transaction was, in substance, a distribution of profits."

The same might be said of the present case. The bonds were the obligations of the company, issued against the accumulated earnings which it had on hand. They were negotiable (Hibbs v. Brown, 190 N. Y. 167, 82 N. E. 1108), and could readily be converted into money, so that the transaction was, in substance, a distribution of profits.

In Lowry v. Farmers' Loan & Trust Co., 172 N. Y. 137, 64 N. E. 796, a similar stock dividend of 50 per cent. was held to belong to the life tenant. Judge Gray, who delivered the opinion of the court, said:

"The fact of the source of the dividend appeared from the company's statement, which showed an accumulation of net surplus from year to year, for 31 years. A cash dividend of 20 per cent. had been declared a short while previously, which the trustee had paid over to the plaintiff. Had this dividend of 50 per cent. been declared and paid in cash, would there have been much doubt about the plaintiff's right to receive it? Matter of Kernochan, 104 N. Y. 618, 629, 11 N. E. 149. What reasonable, or substantial, distinction is there, in principle of ownership, between a dividend which is paid in stock and one which is paid in money, when either is based upon a division of earnings? Mr. Morawetz, in his work on Corporations (section 468), has observed, with respect to such stock dividends, that, in substance and effect, 'it amounts to a

distribution· of profits among the· shareholders in cash ·and a subsequent purchase of new shares in the company with the sums distributed.' "

The rule thus laid down was followed and applied in Robertson v. De Brulatour, 188 N. Y. 301, 80 N. E. 938.

But it is claimed that the authorities referred to do not apply, because the bond issues in question were not a present distribution, since the company retained control over the securities and the bonds simply represented the interest of the shareholders therein, and that the real distribution will not take place until 1947 and 1948, which is practically the time when the company will terminate its existence and all of its assets will then be distributed. The answer to this suggestion is that by the deed of trust the company as such surrendered all its right, title, and interest to the assets transferred. After such transfer, the assets belonged absolutely to the shareholders, subject only to claims that might be made by creditors. When the amounts had been set apart for the benefit of the bondholders, the company itself had no further property in them, and, if the bonds are treated as certificates of interest in these assets, which are to be distributed along with the other assets on the dissolution of the company, the result is the same. That is precisely what certificates of stock are, and the cases cited hold that certificates of stock, issued against accumulated earnings,.belong to the life tenant, and not to the remainderman.

For the foregoing reasons, I am of the opinion that the bonds of both issues belong to the appellant, and not to the remainderman. I am aware that with respect to the bonds issued in 1898 the Supreme Court of Massachusetts reached the opposite conclusion (D'Coge v. Leads, 176 Mass. 558, 57 N. E. 1025); but the Court of Appeals of this state, in McLouth v. Hunt, supra, as already stated, refused to follow the rule laid down in the Massachusetts cases.

In conclusion, the fact should not be overlooked that the result reached is not inequitable to the remainderman. The stock which she receives is worth some 50 per cent. more than it was at the time the testatrix made her will. She is a stranger in blood to the testatrix, while the deceased life tenant was the testatrix's sister.

The judgment appealed from therefore is reversed, and judgment directed in accordance with the views herein expressed, with costs to the appellant and ·the plaintiffs to be paid out of the estate.

INGRAHAM, LAUGHLIN, and CLARKE, JJ., concur. SCOTT, J., dissents.

INGRAHAM, J. I concur in the opinion of Mr. Justice McLAUGHLIN. The testatrix plainly intended that her sister should receive the dividends declared on this stock during her· life, and she as plainly intended that what was to go to Irene Burr was the stock as it existed at the time of her sister's death, without any of the dividends that had been declared during her sister's life. There was nothing to justify an inference that the testatrix ·intended to limit the dividend to be received by her sister to the amount that had· theretofore been declared upon the stock. She must be presumed to· have

understood the nature of the joint-stock association that issued this stock, that it had the right to distribute its surplus earnings among its stockholders at any time, and it was said distribution that she clearly intended, when she spoke of the dividend, that the trustees were to receive and to apply to the use of her sister from year to year so long as she should live. The language used by the testatrix that "at her decease the said stock is to go to Irene Burr, the daughter of my deceased husband's sister Irene, and to her heirs and assigns forever," would limit the bequest to Irene Burr to the stock as it existed at the time of her sister's death; and upon no possible construction of this language could it be held that the dividend that had been declared during her sister's life was to go to Irene Burr.

I think the construction given by the referee to this clause contradicts the express intention of the testatrix, and that the testatrix's sister was entitled to all dividends or distribution profits made by the association during her life.

LAUGHLIN, J., concurs.